## STEUART, et al. Lessee vs. MASON.

ERROR to *Allegany* County Court. This was an action of *Ejectment*, originally brought in the *general court*, for a tract of land called *White Oak Level*. The defendant, (now defendant in error,) took defence on warrant for a tract called *Pleasant Valley*. Plots were made, and issue joined.

1. The defendant at the trial in the *general court* at October term 1805, offered to read in evidence a paper, purporting to be the deposition of Col. *Thomas Cresap*, taken on the 29th of April 1783, by and before a certain *Evan Gwynn*, the deputy of *Henry Shryock*, then, and before and afterwards, sheriff of *Washington* county. And he proved to the court, that *Cresap* died after the taking of the deposition; and produced a warrant of the survey issued out of this court on the 11th of November 1782, in an action of ejectment then depending for *White Oak Level*, being the same land for which this suit is brought, between the lessee of *David, Horatio,* and *Archibald Ross,* (who are also three of the lessors of the plaintiff in the present ejectment, and proved that *William Steuart,* the other lessor of the plaintiff, claims under them,) and *George Mason,* under whom the present defendant claims, in which action the defendant took defence for *Pleasant Valley,* the same tract for which defence is taken in this ejectment. The warrant was the same as is usually issued out of this court, directed to the sheriff and surveyor of the county, for re-surveying the lands in dispute between the parties, and for examining witnesses, &c. [*See 2 Har. Ent. 735.*] That the action was entered *abated* by the death of the defendant, at May term 1793. The defendant also produced to the court the plots and explanations returned by the sheriff and surveyor, to whom the above mentioned warrant of resurvey was directed, with the endorsements thereon, showing that they were returned to this court on the 13th of May 1783. The explanations to the plots appear to be

Depositions taken under a warrant of resurvey issued in a former action of ejectment, and returned with the plots, &c. on the death of the surveyor, evidence against the witnesses, even parties to the suit, and all claiming under them.

The depositions, though dated a day after the date of the warrant, will, if returned with the plots, be considered *prima facie* as having been taken on the survey.

The sheriff on such warrant is authorised to take all depositions relating to the matter in dispute between the parties, and is not confined to the taking of such testimony only as relates to the bounds of the lands to be surveyed.

The time when a certificate of survey was returned to the land office, and the time of the payment of the caution money, are facts for the decision of the jury.

The proprietary *instructions* are evidence when applicable.

If the caution money is paid on the return of a certificate of survey, and a grant is subsequently obtained, it will relate to the date of the certificate, though the warrant, under which the survey was made, irregularly obtained, provided no other person becomes interested between the date

---

of the warrant, and the return of the certificate.

The caution money may, under the rules of the land office, be paid by the application of a warrant for a different tract, as well as if paid in money.

The Proprietary could not be affected by any adverse possession of land before it had been granted.

Evidence that the certificate of an elder survey was in the land office when a junior survey was made and an elder grant thereon obtained, is for the decision of the jury. If the elder certificate was not then in the office, the person claiming under the junior certificate, was a purchaser without notice, and having obtained the first grant, it cannot be defeated by permitting the junior grant to relate to the elder certificate, so as to overreach the title under the elder grant.

The court will decide whether certain parts of a statement of facts, made preparatory to a bill of exceptions being taken, which are objected to, are legal evidence to prove any particular fact, (*note.*)

signed by the sheriff and surveyor on the *28th of April* 1783. He also showed to the court the entry on the docket of this court, at May term 1783, in the said action, in which the said plots and explanations were returned, to-wit: "Warrant executed—Plots and depositions filed 13th of May 1783." He also showed that the deposition of *Cresap*, in the hand-writing of the deputy sheriff, is now on the files of this court, together with other depositions taken and returned with the plots in that action, and had so been on the files of this court, from the time of the return of said plots until the present time. The plaintiff then objected to the reading of *Cresap's* deposition by the defendant.

CHASE, Ch. J. The court are of opinion that the deposition is admissible as evidence, notwithstanding it bears date on the day next subsequent to the day when the explanations to the plots appear to have been signed; the deposition having been returned, with several others, by the surveyor, with the plots in the cause, and filed in the clerk's office; these circumstances affording *prima facie* evidence that the deposition was taken on the survey.

The court are also of opinion, that the several parts of the deposition, which are not *scored*, are legal and proper evidence.

The chief judge observed, that the plaintiff's attorney had objected, that the deposition relates to subjects not relative to the survey, and that the sheriff had no right to take many parts of the deposition; that a general power was not given by the warrant of resurvey to take all depositions, but only such as relate to the subject of the survey, as to prove bounds, &c. This is the first time such an objection has been made. The sheriff is not restricted in taking the depositions of witnesses. The warrant empowers him "to examine upon oath any witness or witnesses, that by either of the parties shall be produced, in relation to the claims and pretensions of said parties to the lands in dispute, or any other land adjacent thereto, which shall be thought necessary by them to be laid out for the better illustration of the matter,"—so that the sheriff is authorised to take any depositions that may relate to the dispute between the parties. The plaintiff excepted.

2. The defendant then read in evidence a warrant granted to *Thomas Bladen* for 2000 acres of land, bearing date

1815.

Steuart
vs
Mason

the 21st of October 1743, on which warrant was the fol-
lowing endorsements made by the clerk of the land office,
viz: "October 27, 1743, received this warrant of his ex-
cellency *Thomas Bladen*, esquire, for 2000 acres—1000
acres whereof he would have located upon *Licking* creek,
and the remaining part between the lowest old town and
the mouth of *Savage* river, and *Evett's* creek, and *Will's*
creek, running into the aforesaid branch. February 20th
1744—1900 acres, part of this order, not being yet execut-
ed, it is this day renewed and continued in force for six
months longer from this date. June 28, 1745—1329 acres,
part of the within warrant being still unexecuted, it is this
day again renewed for that quantity, and continued in force
for six months longer from this date. December 27, 1745.
The within order is continued in force for six months longer
from this date. Executed 100 acres, part of the within war-
rant, for Geo. *Adam Wild*; 138 acres more," &c. the whole
amounting to 2000 acres. Also a warrant granted to
*George Steuart*, and by him assigned to *Bladen*, for 4012
acres of land, bearing date on the 3d of February 1746—
which warrant was thus endorsed: "The above warrant be-
ing by the said *Steuart* assigned to his excellency *Thomas
Bladen*, esquire, and 2000 acres thereof is applied to make
good rights to a warrant for that quantity granted to the
said *Bladen* the 21st of October 1743, and the remaining
2012 acres is applied to make good rights to so much part
of a warrant for 8000 acres, granted unto the said *Bladen*
the 16th of April 1745." Of this last mentioned warrant
to *Steuart*, 2000 acres were applied to make good the rights
of *Bladen* under his first mentioned warrant of the 21st of
October 1743. The defendant further gave evidence, that
in virtue of the said first mentioned warrant, the following
certificates of survey were made for, and patents issued
thereon, to *Bladen*, and his assigns, to wit: 100 acres
called *Fright*, surveyed 11th May 1744, examined 15th
May, 1745, and patented to *John Flemmin* the 29th Sep-
tember 1761; and 1561 acres, in separate tracts, to other
persons at other periods, amounting in all to 1661 acres—
Also a warrant granted to *Bladen* for 2000 acres of land,
dated the 15th of April 1745—on which was the following en-
dorsements: "248 acres assigned *Daniel Cresap*, and appli-
ed to *The Three Spring Bottom*—260 acres assigned *George
Mason*, and applied to *Welchman's Conquest*—240 acres

applied to *Content*—625 acres applied to *Cumberland.*" That in virtue of the last mentioned warrant the following certificates of survey were made out for, and patents issued to *Bladen*, and his assigns, to wit: 248 acres, called *Part of Three Spring Bottom*, surveyed in Nov. 1746, and examined and passed the 9th May 1761, and patented to *Daniel Cresap* on the 29th of September 1761; 240, called *Providence*, surveyed 11th Nov. 1746, examined 16th May 1761, and patented to *Thomas Bladen* the 29th September 1763; 625, called *Cumberland*, surveyed 29th April 1751, examined 16th May 1761, and patented to *Thomas Bladen* the 29th of October 1765; 240 acres, called *Content*, surveyed 30th April 1761, examined 16th May 1761, and patented to *Thomas Bladen*, the 29th of September 1763, making in the whole the quantity of 1353 acres. Also the certificate of a tract of land called *Cumberland*, surveyed for *Bladen* on the 29th of April 1751, for 625 acres, with the agent's receipt, and the governor's approbation that patent might issue, to show that a part of the land mentioned in that certificate was compounded for by the payment of money. The receipt stated that the sum of £15 19 0, for 312 acres, to make up the quantity wanting in the survey, and £15 10 5 for 12 years and 5 months rent of the land to Michm's 1763, was received on the 1st of July 1763, and that patent might therefore issue with his excellency's approbation, which was given. That in virtue of the last mentioned warrant to *Bladen*, dated the 15th of April 1745, for 2000 acres of land, the undermentioned certificates of survey were made out and returned, for and in the name of *Bladen*; but that the same were caveated by Doctor *David Ross*, father to *David, Horatio*, and *Archibald Ross*, three of the lessors of the plaintiff, and under whom *William Steuart*, the other lessor of the plaintiff, claims, and adjudged and patented to Doctor *Ross*, to wit: *Turkey Flight*, examined the 18th of November 1762, and patented to *David Ross* on the 25th of December 1762, for 265 acres, 264 acres whereof in the certificate of *Bladen*; and *Buck Lodge*, examined the 22d of November 1762, and patented to *David Ross* on the 25th December 1762, for 420 acres, 210 acres whereof in the certificate of *Bladen*. Also a warrant to *Bladen* for 3000 acres of land, dated the 16th of April 1745; and showed and proved, that 2012 acres, part of the warrant granted

to *George Steuart* on the 3d of February 1746, for 4012 acres, and by him assigned to *Bladen* as herein before stated, were applied to make good and pay the caution money due to the proprietary for so much of the land mentioned in the warrant to *Bladen*, for 3000 acres, dated the 16th of April 1745. The defendant further gave in evidence, that in virtue of the said last mentioned warrant for 3000 acres, the following certificates of survey were made and returned to the land office, and patents thereon issued to *Bladen*, and his assigns, to wit: 300 acres, called *Pleasant Valley*, surveyed the 1st of June 1745, examined and passed on the 14th of June 1763, and patented to *William, Thomson,* and *John Mason,* on the 3d September 1805. 500 acres, called *Walnut Bottom,* surveyed 1st June 1745; examined 12th August 1746, and patented to *George Mason* the 25th March 1756. 240 acres, called *Hunt the Hare,* surveyed in June 1747, examined 16th May 1761, and patented to *George Mason* 23d June 1763. 285 acres, called *Dispute,* surveyed 1st of June 1745, examined 9th November 1745, and patented to *Daniel Cresop* 29th Sept. 1763; and 12 acres, called *Three Spring Bottom,* surveyed November 1746, examined 9th May 1761, and patented to *Daniel Cresop* 29th September 1761, amounting to 1337 acres in the whole. That in virtue of the last mentioned warrant to *Bladen* for 3000 acres, dated the 16th of April 1745, the following certificates were made out and returned for and in the name of *Bladen,* but that the same were *caveated* by Doctor *Ross,* and were adjudged and patented to him *Ross,* viz. *Lawrence,* examined 19th November 1762, and patented 25th December 1762, for 82 acres, 160 acres in the certificate of *Bladen.* *Will's Town,* examined 20th November 1762, and patented 25th December 1762, for 1125 acres, 915 acres in the certificate of the said *Bladen.* *Big Bottom,* examined 20th November 1762, and patented 25th December 1762, for 197 acres, 240 acres in the certificate of the said *Bladen.* *The Prized,* examined 19th November 1762, and patented 25th December 1762, for 240 acres, 285 acres in the certificate of the said *Bladen.* *Sugar Bottom,* patented for 304 acres, 121 acres in the certificate of the said *Bladen.* The whole quantity patented to *Ross* 1948 acres. The number of acres in *Bladen's* certificate 1671. Also the certificate for the tract of land called *Pleasant Valley,*

containing 300 acres, dated the 1st of June 1745, and surveyed in virtue of a warrant granted to *Bladen* on the 16th of April 1745, for 3000 acres, and endorsed, that on the 18th of May 1761, the certificate and plot disagreed in the direction of the 20th course, and was disallowed by the examiner general. It was corrected the 1st of June 1761, and examined and passed the 14th of June 1763. That it was caveated by Doctor *Ross* the 6th September 1763, and on the 14th of June 1763 £10 16 0, for 18 years rent of the land to midsummer 1763, was received by the agent. The certificate was assigned by *Tasker*, attorney in fact of *Bladen*, to Col. *George Mason*, and it was caveated on the 24th of July 1780, by *David Ross*, son and heir at law of Doctor *Ross*. The defendant also offered evidence, that the same certificate was returned to and in the land office, on and before the 4th of February 1762. He also read in evidence the petition of Doctor *Ross*, dated the 6th of September 1763, to the judges of the land office, praying that *caveat* might be entered against the ~~using~~ *issuing* of a grant for the land contained in the said certificate called *Pleasant Valley*, stating that *Bladen* had on the 3d of June 1745, surveyed and laid out for him a tract of land called *Pleasant Valley;* that the certificate of survey afterwards remained postponed in the land office, and became subjected to the benefit of the first discoverer, agreeably to his Lordship's proclamation; that the petitioner obtained a special warrant, according to the directions of the said proclamation, to affect and secure the said land, which warrant was executed, and certificate of survey thereof returned to the land office, on which patent had issued to the petitioner for 425 acres, called by the name of *White Oak Level.* That *Bladen's* certificate had, since the petitioner's warrant, been assigned to *George Mason.* He prayed that patent might not issue on *Bladen's* certificate, &c. And to prove that the petition was not true, the defendant read in evidence the special warrant, with the recital thereon, which issued to *Ross* for the land called *White Oak Level,* stating that *Ross*, by his petition to his Lordship's agents, did set forth that there was about the quantity of 300 acres of vacant land, known by the name of *White Oak Level*, lying on the mouth of *Evel's* creek, partly cultivated, by means whereof he conceived the same could not be taken up by a common warrant, he prayed a special war-

1815.

Steuart
vs
Mason

rant to affect and secure it, and that on return, &c. he might have his lordships's grant, &c. he having paid the sum of £15 sterling caution for the same, provided he sued out such grant within two years from the date hereof. The surveyor was therefore directed to lay out and carefully survey, for and in the name of *Ross*, the quantity of 300 acres, be the same cultivated or otherwise, &c. That the caveat entered by Doctor *Ross* on the 6th of September 1763, or that entered by *David Ross*, the son, one of the lessors of the plaintiff, on the 24th of July 1780, against a grant issuing on the certificate for *Pleasant Valley*, were neither of them ever acted upon by the judges of the land-office before the 3d of September 1805, when the caveats having been dismissed by the acts of assembly in the petition herein after mentioned and set forth, the grant herein after mentioned for the land called *Pleasant Valley*, was awarded. The defendant then read in evidence a patent granted to *William Mason*, (the defendant,) *Thomson Mason* and *John Mason*, the sons and representatives of *George Mason* the assignee of *Bladen*, on the 3d of September 1805, for the land called *Pleasant Valley*. He also read in evidence the depositions of *Daniel Cresap*, *Thomas Cresap*, *Jarvis Haugham*, *Elizabeth Guest*, *James Guest and James Prather*, taken on the 28th of April 1785, in the former action of ejectment herein before referred to, as to the bounds, possession and cultivations, of *Pleasant Valley* by *Bladen*, and those claiming under him. The parts of the deposition of *Thomas Cresap*, and which are not *scored*, are "that he had a commission as surveyor of that part of *Frederick* county laying above *Monocacy*; that while he acted as surveyor of the said district two warrants were put into his hands to execute for *Bladen*, on any vacant land he should find, one of which warrants was for 2000 acres, and the other for 3000 acres. Having agreed with *Thomas Prather* to act as deputy surveyor for this deponent, recommended it to *Prather*, to lay out and make some surveys, for *Bladen*, in consequence of the above recited warrants, among which he laid out a certain tract of land, where the deponent was present at bounding the trees and running the land; that three certificates were made out by *Jarvis Haugham* for this land, by the name of *Pleasant Valley*, one of which was given to *Bladen*, one sent to the office, and the other entered on his book in folio 64, and stood fair on said book, both plot and certifi-

1815.

Steuart
vs
Mason

cate, till some time in April 1779. The deponent lodged the book on a particular occasion with *Thomas Jennings,* esquire *(a),* where it remained about three years, and then it was brought and delivered to the deponent by *Thomas Jacques,* at which time, upon examination, the deponent found the plot and certificate torn out, as it now appears; that the aforesaid tract of land was purchased by *George Mason* many years since, though this deponent cannot recollect precisely how long, but supposes about 15 or 16 years, from *Tasker,* the attorney of *Bladen.* He accordingly applied to the land office for patent on the assignment of the certificate. Some time after this the deponent was summoned by *George Mason* to appear before the judges of the land office, on a day appointed, where he accordingly appeared; at which time and place he found Doctor *Ross* and Mr. *Johnson,* his attorney, and Mr. *Tilghman* attorney for Col. *Mason,* in order, as the deponent supposed, to examine the witnesses; at which time and place appeared *James Prather,* a witness for Doctor *Ross,* who first being examined declared as follows: That the deponent's book, wherein the certificate and plot were, had for some time past been kept at his father's house; that he often perused it, and saw the plot and certificate of the tract of land called *Valley,* entered in the book by the name of *White Oak Level,* and that it was not so now, that the deponent must have altered it; after *Prather* was examined, *Jarvis Haugham* was sworn, who declared that he was employed by Col. *Prather* to make out all certificates that he or this deponent should produce filed notes for; and that he, amongst other plots, made out the plots and certificates of the land called *Pleasant Valley,* in the name of *Bladen,* one of which he entered on the books of this deponent by the name of *Pleasant Valley,* which remained on the said book, when he saw it last, fair and clear, and without any alteration." The deponent then produced his book to them. The deposition of *Jarvis Haugham* is in corroboration of the deposition of *Thomas Cresap,* in that part of the deposition of the latter respecting the actings and testimony given by the said *Haugham* before the judges of the land office. He also stated "that Col. *Cresap* produced the book to the judges, who having examined it, declared it to be as fair a piece

*(a)* The Register of the Land-Office.

1815.

Steuart
vs
Mason

of writing as could be wrote. That upon the deponent's now examining the said book, he finds the leaf, whereon was entered the certificate for *Pleasant Valley*, torn out, as he supposes, by some ill disposed person." The defendant also read in evidence the depositions of *Thomas Prather* and *Joseph Tomlinson*, taken on the 13th of August 1761; also the depositions of *James Prather*, *Jarvis Haugham* and *Aaron Moore*, taken on the 5th of April 1764; and the deposition of *Providence Mountz*, taken on the 3d of October 1764, all taken before the judges of the land office. The deposition of *Thomas Prather* states, that the certificate was returned in 1747; "that some few days after Governor *Bladen* was out of office, Col. *Cresap* gave him, the deponent, a bundle of certificates to take to *Annapolis*, and informed him they were the last of Governor *Bladen's* certificates, and desired him to put them into the land office, which he did, and took a receipt therefor, which he delivered to Col. *Cresap*; that he saw Mr. *Bladen* the morning after he had delivered them into the office, who was vexed with Col. *Cresap* for not having returned the certificates sooner, as it would have saved him several fees of office." The deposition of *Haugham* states, that he made the certificate as deputy for Col. *Cresap* and Col. *Prather*. *Tomlinson* proved, that in 1759 he saw a bundle of Mr. *Bladen's* certificates in the land office. He mentioned the names of sundry tracts included in those certificates, being those herein mentioned, but no mention of *Pleasant Valley*. He saw the same certificates at the same time in the possession of *John Ross*, esquire. He also offered evidence to prove, that before the year 1760 *Bladen*, by his tenants, entered upon the land called *Pleasant Valley*, and occupied and possessed the same by his tenants residing on and cultivating the field, designated on the plots in this cause, by No. 3, &c. and so continued the possession, occupation and cultivation, until the 14th of June 1763, when he sold and transferred the certificate for the land to *George Mason*, who thereupon, in like manner, possessed, occupied and cultivated the same, by his tenants, from the time last aforesaid until his death, which happened in 1793, and that then the representatives of *George Mason* in like manner, by their tenants, possessed, occupied and cultivated the same, from the time last aforesaid until the bringing of

this ejectment, and ever since. The plaintiff then produced in evidence a petition by Doctor *Ross*, the father of *David*, *Horatio*, and *Archibald Ross*, three of the lessors of the plaintiff, for warrants of proclamation, to affect several of the aforesaid tracts of land surveyed under the warrants granted to *Bladen*, and which tracts, so to be affected, are inserted in the petition, viz. *Sugar Bottom*, containing 235 acres, by virtue of a warrant granted to *Bladen* on the 16th of April 1745, for 3000 acres; *Buck Lodge*, containing 140 acres, by virtue of the same warrant; *Willis's Town*, containing 915 acres, by virtue of the same warrant; *Puzzle*, containing —— acres, by virtue of the same warrant; *Black Elk* or *Muddy Lick*, containing —— acres; *Big Bottom*, containing 240 acres; *Turkey Flight*, containing 130 acres; and *Lawrence*, containing —— acres. He also offered in evidence, by the statement of the judges of the land-office hereafter particularly mentioned, that warrants of proclamation were not granted, but special warrants, on the following parcels of land, and which are the same as those before mentioned in the defendant's statement, viz. On *Sugar Bottom*, *Buck Lodge*, *Will's Town*, *Prized*, *Big Bottom*, *Turkey Flight*, and *Lawrence;* that the warrants to affect them were first issued on the 16th of January 1761, and that they were renewed on the 4th of February 1762; under which renewed warrants the surveys were made, and patents obtained, as in the defendant's statement; and proved that these warrants were recorded in the land-office, one after the other, in regular succession. He also offered in evidence a special warrant granted to Doctor *Ross*, to affect *White Oak Level*, dated the 16th of January 1761, and renewed the 4th February 1762, under which warrant a survey was made on the 3d of April 1762, the certificate was examined and passed the 22d of November 1762, the sum of £1 was paid the 7th of December 1762, for improvements; 20s. 9d. paid on the 15th of December 1762, for rent to Christmas 1762, and patent granted on the 25th of December 1762. He further offered in evidence the following decision of the judges of the land-office, respecting the lands in the proceedings mentioned, and the confirmation of the chancellor, "To His Excellency *Horatio Sharpe*, Esquire, Lieutenant-General and Chief Governor of the Province of *Maryland*, and Chancellor and Keeper of the Great Seal thereof.—May it please your Excellency,

1815.

Stewart
v.
Askew

There having been a dispute in the land-office of an uncommon and extraordinary nature, in which *Thomas Bladen*, Esquire, and Doctor *David Ross*, are the persons concerned, we take the liberty, in pursuance of his Lordship's instructions, (by which we are directed in difficult and unprecedented cases to desire your excellency's advice and assistance,) to submit to your excellency, as chancellor, a state of the case or matter depending before us, together with our opinion, hoping you will be pleased to favour us with your excellency's sentiments thereupon. On the 16th of January 1761, Doctor *David Ross* applied to us, in usual form, for warrants under the proclamation of resurvey, and to be allowed the preemption of the following tracts of land: *Wills's Town*, *Buck Lodge*, *Sugar Bottom*, *Turkey Flight*, *Prized*, *Lawrence*, and *Big Bottom*, containing 2254 acres; but as no certificates for those lands appeared to be returned or lodged in the office, which is essential to the issuing of warrants under the proclamation, Mr. *Ross* petitioned for and obtained special warrants to affect the lands aforesaid, having, as your excellency knows is usual, first paid the agent caution for the same. On the 16th of May 1761, the undermentioned certificates were returned to the office, signed by Mr. *Thomas Cresap*, who was deputy surveyor of the county at the times these certificates respectively bear date, viz. *Wills's Town*, surveyed in June 1745; *Buck Lodge* and *Sugar Bottom* in June 1746; *Turkey Flight* and *Prized*, in August 1746; and *Lawrence* and *Big Bottom* in November 1746; containing in the whole 2254 acres, surveyed as is set forth in the said certificates for *Thomas Bladen*, esquire. As the lands described in those certificates appeared to be the same tracts for which Doctor *Ross*, (as we have already observed,) obtained special warrants, we thought it our duty to forbid patents issuing to Mr. *Bladen*, till we could examine the records, and inquire how it had happened that those certificates had laid so long dormant. On examination we found in the land records the following entries—"October 21, 1743. Order issued to the surveyor of *Prince-George's* county, to lay out for his excellency *Thomas Bladen*, esquire, 2000 acres of land, caution to be paid on the return of the certificates, &c. 2000 acres, part of a warrant for 4012 acres, granted Doctor *George Steuart* the 3d of February 1746, and by him assigned his excellency *Thomas*

*Bladen*, esq. is applied to make good rights to the above warrants. April 15, 1745. Warrant then issued to the surveyor of *Prince-George's* county, to lay out for his excellency *Thomas Bladen*, esq. 2000 acres of land, caution to be paid on the return of the certificate, &c. April 16, 1745. Warrant then issued to the surveyor of *Prince-George's* county, to lay out for his excellency *Thomas Bladen*, esq. 3000 acres of land, caution to be paid on the return of the certificates. Rights made good to 2012 acres, part of this warrant, by applying so much as part of a warrant for 4012 acres, granted said *Bladen* the 3d of February 1746." That your excellency may be thoroughly informed, we think it necessary to lay before you a copy of the original warrants which issued out of the office in consequence of the foregoing entries; and to state, in a distinct manner, the several tracts that were surveyed, and for which certificates were returned into the office by virtue of those warrants respectively: "Lay out for the use of his excellency *Thomas Bladen*, esquire, 2000 acres of land, and return your certificate or certificates of survey thereof within six months from the date hereof, and for your so doing, this shall be your warrant. Given under his Lordship's lesser seal of arms, this 21st of October 1743." The above warrant was renewed in the usual form, and the following tracts of land were laid out by virtue thereof: *Buck Lodge*, 210 acres, and *Sugar Bottom*, 109 acres, both surveyed in June 1746, and claimed by *Ross*, amounting to 319 acres. *Flight to Flemmin*, 100 acres, surveyed April 1744; *Boil's Fancy*, 50 acres, in April 1745; *Beaver Dam Bottom*, 138 acres, ditto; *Lane's Field*, 175 acres, ditto; *Moody's Pleasure*, 50 acres, ditto; *Maiden Head*, 58 acres, ditto; *Barreny Hill*, 80 acres, in February 1745; *Welchman's Conquest*, 260 acres, in March 1745; *Beaver Dam Bottom Enriched*, 130 acres, in March 1745-6; *Mills Folly*, 100 acres, ditto; *Cove*, 510 acres, in April 1746; and *Cumberland*, 625 acres, in April 1751, amounting in all to 2286 acres. The original warrant, which issued in consequence of the second order, being in the possession of the surveyor, the words therefore cannot be inserted; but the following tracts of land were laid out by virtue thereof: *Turkey Flight*, 264 acres, surveyed August 1746, and *Big Bottom*, 240 acres, surveyed November 1746, both claimed by *Ross*,

1815.

Steuart
v⁴
Ma.on

amounting to 504 acres. *The Three Spring Bottom,* 248 acres, surveyed November 1746; *Providence,* 240 acres, ditto; *Content,* 240 acres in April 1751; amounting together to 728 acres. "Lay out for his Excellency *Thomas Bladen,* 3000 acres of land, in any part of this province, not formerly surveyed or cultivated by any person, or lands leased or reserved for his Lordship's use, and return your certificate of survey thereof into his Lordship's land office with all convenient speed, with the names of the place, and of what manor to be held; and for your so doing this shall be your warrant. Given under his Lordship's lesser seal of arms this 16th of April 1745. To Capt. *Thomas Cresap,* surveyor of *Prince-George's* county " By virtue of the above warrant the following tracts of land were laid out: *Wills Town,* 915 acres, surveyed June 1745; *Sugar Bottom,* 121 acres, in June 1746; *Prized,* 235 acres, in August 1746; and *Laurence,* 160 acres, in November 1746; all claimed by *Ross,* amounting to 1430 acres. *Three Spring Bottom,* 12 acres, surveyed November 1746; *Walnut Bottom,* 500 acres; *Dispute,* 285 acres; and *Hunt the Hare,* 240 acres; surveyed, June 1747; amounting together to 1037 acres. By this state of the returns from the deputy surveyor, your excellency will observe, that there has been laid out for *Thomas Bladen,* esquire, by virtue of these warrants, 6305 acres, of which 2254 acres are claimed by Doctor *Ross;* and it is also evident that 5200 acres were surveyed before Mr. *Bladen* left this province, (which he did in June 1747,) yet he never made good rights for more than 4012 acres, which was in 1746. Your excellency will observe, that in the order of October 1743, as well as in the other two of the 15th and 16th of April 1745, there are these words—"*caution to be paid on the return of the certificates,*" which is unprecedented, and the more extraordinary, as no special order appears or is referred to. In the 11th *article* of his Lordship's instructions, dated the 14th of June 1733, is contained the following words: "There shall be in all future common warrants a clause inserted by proviso, that the patent shall be taken out within the space of two years after the date of such warrant, which said clause you are hereby enjoined so strictly to observe as not to suffer the renewal of said warrant after such time, or any patents to issue, contrary to the true intent and meaning

thereof." It is, as your excellency will observe, expressly ordered, that a conditional clause be inserted in every common warrant, enjoining the person obtaining it to sue out patent within two years from the date of such warrant, nevertheless there is no such proviso or clause in the warrants granted to Mr. *Bladen*, which are therefore, in that respect, repugnant to his Lordship's instructions. We shall conclude our remarks on those warrants with observing, that instead of the usual words, *"return your certificates of survey thereof within six months from the date hereof,"* there are inserted in the warrant of the 16th of April 1745, the words following: "return your certificates of survey thereof into his Lordship's land office with *all convenient speed,*" which expression, we conceive, can never be construed to imply the space of 15 or 16 years. It appears by an old and imperfect memorandum book in the office, that certificates for *Buck Lodge, Sugar Bottom, Providence, Turkey Flight, Big Bottom, Prized, Lawrence, Cove,* and *Three Spring Bottom,* were returned into the office some time before April 1747; this Mr. *Thomas Cresap,* by his letter to us dated the 6th of August 1761, seems to admit, or rather insist on, and is supposed by the evidence of Col. *Thomas Prather,* who acted at that time as assistant to *Cresap,* and by the deposition of *Joseph Tomlinson,* which deposition with that of Col. *Thomas Prather,* and Mr. *Cresap's* letter, are submitted to your excellency's perusal: But we beg leave to remark, that although all certificates are directed to be returned by the deputy surveyors into the land office, there is nothing more common than for the parties themselves, or for others on their behalf, to withdraw the same; nor can it be otherwise; for until the examiners endorsement appears on the back of each certificate, as well as his Lordship's agents acknowledgment of composition, the certificate is incomplete, and as nothing appears to the contrary it is more than probable, if any regard be paid to *Tomlinson's* deposition, that this was the case with those certificates delivered into the office for Mr. *Bladen* before April 1747. Upon the whole, as Mr. *Bladen* did not pay caution for, or make good rights to more than 4012 acres, though he had it in his power before he left the province, and as no person ever applied on his behalf to pay up caution for the remainder until May 1761, which was after Doct. *Ross* had obtained his

1815.

Steuart
vs
Mason

special warrant, and there was a sufficient quantity of land surveyed and unpatented to satisfy both their claims; therefore we are of opinion, that as Mr. *Bladen* has only as yet obtained patents for 1696 acres, that patents do issue to him for 2316 acres more, (he paying the arrearages of rent,) which completes the quantity of 4012 acres, that being the whole for which he has paid caution. We are also of opinion, that patents do issue to Doct. *David Ross*, of *Prince-George's* county, upon the certificates which have been or shall be returned into his Lordship's land office, by virtue of the special warrants obtained by him on the 16th of January 1761, amounting in the whole to 2254 acres, he having paid caution for that quantity; unless Mr. *Bladen*, or his attorney, shall produce an instruction from his late Lordship to support so unusual a proceeding. All which is humbly submitted to your Excellency's superior judgment, by

Your Excellency's humble servants,<br>
B. *Calvert*,<br>
G. *Steuart*.

November 11, 1762."

"Gentlemen,

The foregoing state of the proceeding on the part of Governor *Bladen*, seems to be very much out of the common course, which I conceive no less than the express authority of, and direction from, the late Lord Proprietary could dispense with, either in Mr. *Bladen's* or any other person's case; and had there been such particular authority from his Lordship, either to the then judges of the land office, his Lordship's agent, or to the governor himself, it ought doubtless to have been entered at large, or at least noticed by some entry on record, to the end that it might always have appeared that his Lordship (who alone could do it,) had dispensed with the usual course of proceeding in the case of Mr. *Bladen*, and that the judges had sufficient warrant for their justification in proceeding after such manner; but their being, by your account, no such special authority from his Lordship to be found in the land office, (which is the proper repository for every thing relating to his Lordship's grants of lands,) nor even the least hint appearing amongst the records that any such order from his Lordship, in favour of Mr. *Bladen*, ever existed, you could not, I apprehend, presume there was any such

order. The affair being hitherto thus circumstanced, and the several surveys for Mr. *Bláden* having been made on such irregular and unusual warrants, I should have thought that even if no person had applied for warrants to affect the lands, you would have acted justifiably had you declined issuing any patents at all on certificates returned in pursuance of such irregular warrants, till you could have laid the whole affair before his Lordship, and have received his instructions thereupon; but since Doctor *Ross* has applied for and obtained warrants to affect several of the tracts which, according to your statement, had been surveyed for Mr. *Bladen,* the principal thing now to be considered, seems to be, whether Doctor *Ross* has been regular in his application, and (whatever may be done with regard to the rest of the lands,) whether he has a right to patents for the 2254 acres, for which he obtained warrants; and with regard to the regularity of Doctor *Ross's* application to the office on the present occasion, such special warrants as he obtained, seem to me to have been the proper warrants, for as *the lands in question* had been surveyed by virtue of Mr. *Bladen's* warrants, directed by the office to the surveyor of the county, and a minute made in the office of the certificates having been returned, they could not, I apprehend, have been afterwards *affected by a common warrant;* and by what you say in the foregoing statement, no warrants could issue, under the proclamation to affect them, by reason that no certificates on Mr. *Bladen's* warrants were *to be found in the office;* and if under these circumstances such special warrants as were granted to Doctor *Ross* would not affect the lands, it seems to me that a person, for whom land hath been once surveyed, has nothing more to do, than by collusion with the surveyor, or indeed without such collusion, after his certificate shall have been returned to the office, and there minuted, to withdraw it again under pretence of having it examined, of settling with the agent, or some other purpose, and for the future keeping of it in his hands, in order totally to prevent his Lordship from receiving one shilling for the land, either from the party himself, or by sale of it to any other person. The warrants granted to Doctor *Ross* being of such a nature as oblige him, (over and above the caution money paid by him at the time they were obtained,) to pay for any improvements on the land or cultivations, the Lord Proprietary's inte-

rest seems, in this case, to have been consulted as much in every respect as it would have been had warrants issued under the proclamation; nor do I conceive warrants under the proclamation could do any thing more besides describing the lands, and intimating that the person, for whom the same lands was formerly surveyed, had neglected to sue out patent within the two years, according to his Lordship's *eleventh* instruction, quoted in the above statement. If then Doctor *Ross* has been regular in his application and proceeding, did pay the caution money to his Lordship on obtaining his warrants, and has done every thing in his power to entitle himself to patents, while on the contrary there has been great irregularity and neglect at least on the part of Mr. *Bladen*, and the laying the former under any difficulty would tend to prevent application to the office in future for lands liable to be taken up under his Lordship's instructions, I am of opinion, with you, that patents should forthwith issue to Doctor *Ross* for the 2254 acres, by him affected in the manner above stated.

*Horatio Sharpe.*

To *Benedict Calvert* and *George Steuart*, Esquires, Chief Judges of the Land Office."

The plaintiff also offered in evidence the Lord Proprietary's instructions to the judges and secretary of the land office, bearing date the 14th of June 1733; the *eleventh instruction* is as follows: "There shall be in all future common warrants a clause inserted by proviso, that the patent shall be taken out within the space of two years after the date of such warrant, and which said clause, you are hereby enjoined so strictly to observe, as not to suffer any renewal of the said warrants after such time, or any patents to issue contrary to the true intent and meaning thereof."

The plaintiff also offered in evidence, that *Bladen*, to whom the warrants of the 21st of October 1743, 15th of April 1745, and 16th of April 1745, issued, was from the 21st of September 1742, until the 12th of March 1746-7, the governor of the then province (now state,) of *Maryland*, and did not leave the province until the 16th of May 1747. He also offered evidence, that the certificate called *Pleasant Valley*, mentioned in the defendant's statement, was not returned to the land office before 14th of June 1763. He also offered in evidence by the locations made on the plots in this cause, that the land which is included in the

1815.

Steuart
vs
Mason

survey called *Pleasant Valley*, is the same land taken up and patented to Doctor *Ross*, by the name of *White Oak Level*. He then produced the original certificate of the survey of *Pleasant Valley*, and from the same showed to the jury that there is no entry upon the said certificate made by any clerk or officer in the land office, by which it can be inferred that the same was in the land office, until the 6th of September 1763, when there is an entry thereon that the same was caveated by Doctor *Ross;* and the plaintiff also showed to the jury, by the endorsements thereon, that the said certificate did not pass examination until the 14th of June 1763. He then read in evidence the grant which issued to Doctor *Ross*, on the certificate of *White Oak Level*, dated the 25th of December 1762, for 425 acres. He also read in evidence the following entries from the *Rent Roll* of *White Oak Level*, stating that it was surveyed for Doct. *Ross*, for 425 acres, on the 3d of April 1762, patented 25th of December 1762, and 17s. rent. He also read in evidence the entries from the *Debt Books*, by which *White Oak Level* is charged to Doctor *Ross*. He also offered in evidence, by the production of the original *Rent Rolls* and *Debt Books*, that *Pleasant Valley* is not charged either to *Bladen* or to *George Mason*, or any person claiming under them. He also offered in evidence that Doctor *Ross*, from the year 1761, and before and until his death, which happened in or about the year 1778, resided at *Bladensburgh*, about 30 miles from the city of *Annapolis*, the place where the land-office was then held. He also offered in evidence the petition filed on the 3d of September 1805, by the children and devisees of *George Mason*, junior, deceased, son and devisee of *George Mason*, deceased, to obtain a patent for *Pleasant Valley*, and the order passed thereon. The petition stated, that on the 1st of June 1745, *Thomas Bladen* had made for him a certificate of survey, in virtue of a previous *legal warrant duly compounded for*, including 300 acres called *Pleasant Valley*; that on the 18th of May 1761, the said certificate was rejected by the examiner, because of an error therein; that on the 1st June 1761, it was corrected, and on the 14th of June 1763, examined and passed;—that on the 14th of June 1763, *Bladen* paid up all arrearages of quit rent due;—that on the 14th June 1763, *Bladen*, by his attorney, sold and assigned the certificate of Col. *George Mason*, for a valuable con-

1815.

Steuart
vs
Mason

sideration *bona fide* paid;—that on the 6th of September 1763, Doctor *Ross* entered a caveat against a grant issu‥ing on the said certificate, which was never acted upon; —that after the death of *Ross*, to wit, on the 24th July 1780, *David Ross* his heir at law, also entered a caveat, which was never acted upon, and stands dismissed by the two acts of assembly of *April* 1782, *ch.* 38, *s.* 2 & 8, and *November* 1797, *ch.* 114, *s.* 11; that Col. *George Mason* is dead, &c. Prayer for a patent, &c. The chancellor's order, as judge of the land-office, is that patent issue to *William Mason*, *Thomson Mason*, and *John Mason*, surviving executors of *George Mason*, late of *Lexington*, and their heirs, in trust for and to the uses mentioned in the last will of the said *George Mason*. He then read in evidence the last will and testament of Doctor *Ross*, dated the 23d of February 1778, devising the residue of his estate, real and personal, (comprising the land called *White Oak Level*,) to his three sons *David*, *Horatio* and *Archibald*, equally to them and their heirs, and constituted his wife *Ariana Ross* his executrix. He also offered in evidence, that *Ariana Ross*, in the will named, is also dead; and that *David*, *Horatio*, and *Archibald Ross*, three of the lessors of the plaintiff, are the sons of Doctor and *Ariana Ross*, deceased, and that *David Ross*, the lessor of the plaintiff, is the eldest son. He also offered in evidence a deed of trust dated the 14th of August 1799, from *David Ross*, the son, to *William Steuart*, (another of the lessors of the plaintiff,) of all his lands, &c. He also offered in evidence, that the original petition of the 6th of September 1763, is not in the hand-writing of Doctor *Ross*, nor is the same signed by him; but that the said petition is in the hand-writing of *Thomas Hodgkin*, then one of the writers or assistant clerks in the land-office. The defendant then read in evidence a letter produced by the plaintiff, written by *Hodgkin* to Doctor *Ross*, dated the 31st of August 1763, with several marginal notes in the said letter in the hand-writing of said *Ross*, stating, amongst other things, that nothing further had been done with *Bladen's* certificates that he knew of, except those mentioned therein, the locations of which he inserted at his request. "*David Ross's* patent 300 acres, *Pleasant Valley*, befor, by the name of beginning at two bounded white *White Oak Level*." oak trees, standing near the river

1815.

Steuart
vs
Mason

bank about a mile below the mouth of *Evert's* creek. 510 acres, *The Cove*," &c.  "That those four tracts had been assigned to Col. *Mason*, and the patents made out in his name, though not yet signed by the governor," &c.  The defendant used the said letter to prove that *Hodgkin* acted as the agent of *Ross*, and under his authority, and that it was this act of entering a caveat on the 6th of September 1763, which prevented *George Mason* from obtaining a patent for *Pleasant Valley*, at that time.  The plaintiff then further proved, that the original dockets kept in the land-office, with respect to caveats, and the entries thereon, and the proceedings relating thereto, have been lost; and that the caveats and proceedings in that office respecting the dispute between *Ross* and *Bladen* in 1761 and 1762, have been lost, and cannot on the strictest examination, be found, except the statement of the judges, with their opinion, and the opinion and decision of the chancellor, and the depositions of *Tomlinson* and *Prather* in 1761, herein before referred to; and that the memorandum book referred to in the report of the judges, is lost; and that the proceedings upon the caveat between *Ross* and *Mason* in 1763 and 1764, except the depositions of *James Prather*, *Jarvis Haugham*, *Aaron Moore*, and *Providence Mountz*, taken in 1764, and herein before referred to, are also lost; and also proved, that until of late years, the time when certificates were returned into the office was not endorsed on the certificates, but was entered in a memorandum book kept for that purpose, and that the said memorandum book is also lost; and further, that *John Ross*, mentioned in the deposition of *Tomlinson*, was examiner-general of certificates, and deputy receiver of the Proprietary quit rents from the year 1743 until the year 1760.  And further offered in evidence three orders from the record books of the land-office, the first of the 21st of October 1743, for laying out 2000 acres of land for *Bladen*, the second of the 15th of April 1745, for laying out for him 2000 acres, and the third of the 16th of April 1745, for laying out for him 3000 acres, all of them expressing that the caution was to be paid on the return of the certificates.  The plaintiff also offered in evidence the original certificates returned to the land-office under the warrant issued to *Bladen*, (and on which patents were afterwards granted to *Ross* as before stated,) to wit:  264 acres, *Turkey Flight*, sur-

veyed 8th August 1746, and examined 8th May 1761; 210, *Buck Lodge*, surveyed 13th June 1746, and examined 16th May 1761; 160, *The Laurence*, surveyed 8th Nov. 1746, and examined 16th May 1761; 915, *Will's Town*, surveyed 1st June 1745, and examined 16th May 1761; 240, *The Big Bottom*, surveyed 12th Nov. 1746, and examined 18th May 1761; 235, *The Prized*, surveyed 8th Aug. 1746, and examined 18th May 1761; and 230, *Sugar Bottom*, surveyed 13th June 1746, and examined 18th May 1761. The defendant *(a)* then prayed the opinion of the court, and their direction to the jury, that the patent granted on the 3d of September 1805 to *William Mason*, *Thomson Mason*, and *John Mason*, for the land called *Pleasant Valley*, in point of law does relate to the certificate for the said land made on the 1st of June 1745, for *Thomas Bladen*, esquire, to give title to the said *William Mason*, &c. and those under whom they claim, from the said 1st of June 1745; and so far as the land mentioned in the said patent called *Pleasant Valley* is included in the patent for the land called *White Oak Level*, that the former overreaches the latter.

*Pinkney* and *Johnson*, for the Plaintiff, stated, that there were three questions to be argued—1. As to the nature of the contract between the Proprietary and governor *Bladen*, on the 16th of April 1745, when *Bladen* obtained his warrant.

2. What was the actual situation of *Bladen's* certificate of the 1st of June 1745, on the 16th of January 1761, and the 4th of February 1762; and whether the certificate was returned to and in the office when Doctor *Ross* obtained his warrant?

3. As to the time when the composition money was paid on *Pleasant Valley*.

*(a)* Certain objections were made to certain parts of the statement of facts drawn up by the counsel.

Chase, Ch. J. So far as the parties agree upon the facts, the court retain the same in the statement; but if objections are made, the court will decide whether what is stated and objected to is legal and proper evidence to prove any particular fact. The counsel must state the fact to be proved, so that the court may judge whether what is stated is legal and proper evidence to prove the fact. Legal evidence must be produced, and the court are to decide on the legality of the evidence. *White Oak Level* is not mentioned or comprehended in the petition of Doctor *Ross* in 1762. The paper dated 30th Nov. 1765, has no relation to *White Oak Level* or *Pleasant Valley*, and is no decision of the judges, but is only a memorandum referring to the decision.

They denied that the contract for the land ever had a legal inception; if it had, that the terms had not been complied with by those ,for whose benefit it was made. That if the contract had a legal inception, the plaintiff, and those under whom he claims, had no legal notice of it. They referred to the 3d, 4th, and 11th articles of the Proprietary instructions of the 14th of June 1733. *Hammond et al. Lessee vs. Warfield,* 2 *Harr. & Johns.* 151. *Peters' Lessee vs. Mains,* 4 *Harr. & M'Hen.* 423; and *Land Hold. Ass.* 53, 54.

*Martin,* (Attorney-General,) and *Mason,* for the Defendant.

CHASE, Ch. J. The Proprietary instructions are evidence so far as they are applicable to the subject.

The Court are of opinion, that if the jury upon the whole evidence should find that the certificate of *Pleasant Valley* was returned to the land-office on or before the 4th of February 1762, and was in the office on that day; and also find that the composition was paid on the certificate by the application of as much of *George Steuart's* warrant as was necessary to pay the same, on or before the said 4th of February 1762, that then the patent to *William Mason, Thomson Mason,* and *John Mason,* will operate by relation, from the date of the certificate of *Pleasant Valley,* to transfer the legal estate to the grantees in all the land contained within the limits of the grant; although the warrant to *Thomps Bladen,* in virtue of which the survey was made, was irregularly obtained, as no other person had, in the intermediate time between the obtention of the warrant and the 4th of February 1762, acquired an interest in the land to prevent such relation. The plaintiff excepted.

3. The defendant then prayed the court to direct the jury, that the application of part of the warrant granted to *George Steuart,* on the 3d of February 1746, to wit, 2012 acres of that land, to make rights to the land mentioned in the warrant to *Bladen* for 3000 acres, dated the 16th of April 1745, was a good payment on the 3d of February 1746, for so much of the land (to wit, 2012 acres,) mentioned in the said warrant for 3000 acres, dated the 16th of April 1745; and that the application of that quantity of land so paid for, ought in point of law to be made to the surveys

1815.

Steuart
vs
Mason

made in virtue of that warrant, in the order in point of time in which the said surveys were made by the surveyor who executed the said warrant. That Doctor *Ross* (the father,) having on the 16th of January 1761, applied to the judges of the land office to affect, by proclamation warrants, five tracts of land surveyed in virtue of that warrant, upon the ground that the caution had not been paid thereon, to wit, the tracts called *Lawrence, Will's Town, Big Bottom, The Prized,* and *Sugar Bottom,* containing altogether 1671 acres, the issuing of special warrants to the said *Ross* for the said lands, dated the 16th of January 1761, and having in virtue of that application afterwards, to wit, on the 11th of November 1762, by the judgment of the judges of the land office, obtained an order to have patents for the said land; and in virtue thereof did obtain grants for all the said land, thereby leaving only the quantity of 1337 acres of land surveyed for *Bladen,* in virtue of the said warrant for 3000 acres, to wit, *Pleasant Valley* 300 acres; *Walnut Bottom* 500 acres; *Dispute* 285 acres; *Three Spring Bottom* 12 acres, and *Hunt the Hare* 240 acres; the application of the said 2012 acres of land, for which *Bladen* made good right on the 3d of February 1746, ought and must be applied to make good right to the lands called *Pleasant Valley, Walnut Bottom, Dispute, Three Spring Bottom,* and *Hunt the Hare.*

CHASE, Ch. J. The court are of opinion, and so direct the jury, that if they find the facts as stated by the defendant, that then the same are sufficient in law for them to find that as much of the warrant granted to *George Steuart* on the 3d of February 1746, as was necessary for the payment of the caution on *Pleasant Valley,* was so applied on the 3d of February 1746, and that such application of warrant was a good payment of the caution on the 3d of February 1746, which was then due on the survey of *Pleasant Valley.* The plaintiff excepted.

4. The defendant then offered in evidence, that before the year 1766, it was not the practice in the Proprietary land office of the then province to endorse on certificates of survey the time when they were returned into the office, or to make any entry thereof; and that before that time it was the practice of the Lord Proprietary's survey-

1815.

Steuart
vs
Mason

ors, when they made surveys for individuals upon warrants issuing from the said office, to return to the office the certificate of survey so made, and for the clerk of the office to send that certificate of survey to the examiner general, to be examined, and that the examiner returned the same after he had examined it, to the said office, to be there acted upon. The plaintiff then offered in evidence, that there were instances under the Proprietary government, where the parties themselves, who claimed under certificates, before the certificates were examined, had returned them to the land office, and the officers of that office had sent them to the examiner general for examination. That before the year 1760 it was customary, when certificates were returned to the office to note the same in a memorandum book kept for that purpose, and that the memorandum book has since been lost. That although it was customary for the surveyor, who made out a certificate before the revolution, to return the same to the land office, from whence it was sent to the examiner, yet there was no regulation which prevented the party himself from bringing down his own certificate, and carrying it himself to the examiner, previous to its coming into the land office; and that before the revolution, as well as since, it was the business of the owner of a certificate, which had been examined and passed, to carry the same to the person authorised to receive the composition money, that he might ascertain the sum to be paid thereon, and to pay the said composition money to the person so authorised to receive the same. He further offered in evidence, that all the evidence offered to the jury, as establishing the usage of the land office, and the return of the certificates to that office, was derived from *John Callahan,* now dead, but who was for many years the register thereof; and that the said *Callahan,* at the time of stating said usage and practice, declared that he had no knowledge what was the usage and practice in the land office in the year 1753, and for many years thereafter; and that when he spoke of the usage and practice of the land office, he meant the usage and practice of that office while he was a writer therein, but that he supposed the usage and practice, which had been adopted in former times, was the same. The defendant then prayed the opinion of the court, and their direction to the jury, that these facts, so offered in evidence, are sufficient to prove, that the certifi

cate of survey for *Pleasant Valley* was duly returned to the land office before the 18th of May 1761, unless the plaintiff can prove the contrary.

CHASE, Ch. J. The Court are of opinion, that the time when the certificate of survey for *Pleasant Valley* was returned to the land office, is a matter of fact determinable by the jury. They therefore refuse to direct the jury agreeably to the prayer of the defendant. The defendant excepted.

5. The defendant then prayed the court for their opinion and direction to the jury, that *Thomas Bladen*, having had a certificate made out for him for *Pleasant Valley* in 1745, and having paid the composition money thereon in 1746, the entry of *Bladen* by his tenant into that land in 1760, was lawful; and if the jury are satisfied of these facts, and are also satisfied that *Bladen*, and *George Mason*, and *William Mason*, claiming under *Bladen*, have by their tenants held the said land by residing thereon, and by holding a part thereof under actual enclosure, and by cultivating such part, claiming the whole tract, from the year 1760 to the time of bringing this action, that then such entry is in point of law an entry into the whole tract called *Pleasant Valley*; and that such subsequent holding is in point of law a possession of the whole tract, so as to bar, by the adversary possession of the defendant, and those under whom he claims, the right of the plaintiff in this action to recover any part of the land called *Pleasant Valley*.

CHASE, Ch. J. Until there is a grant for the land there can be no rightful possession against the proprietary, so as to bar him by limitations. Where the matter arises *in pais* there it is different, as in the case of escheat. The court refuse to give the direction prayed. The defendant excepted.

Owing to the indisposition of some of the jurors, one of them was withdrawn by consent, and the rest discharged, and the cause continued. The general court having been abolished by the acts of 1804, *ch.* 55, and 1805, *ch.* 16, this action was transferred to *Allegany* county court by the act of 1805, *ch.* 65. It came on and was tried in that court at October term 1806, where the parties gave the same evidence as is herein before set forth, and the follow-

ing exceptions were taken to the opinions and directions of the court on the prayers submitted.

1. The defendant prayed the court for their opinion and direction to the jury, that the facts offered in evidence are sufficient, in point of law, to prove that the certificate of survey of *Pleasant Valley* was duly returned to the land office before the 18th of May 1761, unless the plaintiff can prove to the contrary. Which opinion and direction the Court, [*Clagett* and *Shriver*, A. J.] gave accordingly. The plaintiff excepted.

2. The defendant also prayed the court for their opinion and direction to the jury, that the application of part of the warrant granted to *George Steuart* on the 3d of February 1746, to wit, 2012 acres of that land, to make rights to the land mentioned in the warrant to *Thomas Bladen* for 3000 acres, dated the 16th of April 1745, was a good payment on the 3d of February 1746, for so much of the land, to wit, for 2012 acres, mentioned in the warrant for 3000 acres, dated the 16th of April 1745. And that the application of that quantity of land so paid for, ought, in point of law, to be made to the surveys made in virtue of that warrant in the order in point of time in which the said surveys were made by the surveyor who executed the said warrant. That *David Ross*, the father, having on the 16th of January 1761, applied to the judges of the land office, and obtained special warrants to affect by proclamation, five tracts of land surveyed in virtue of that warrant, upon the ground that the caution money had not been paid thereon, to wit, the lands called *Lawrence*, *Wills Town*, *Big Bottom*, *The Prized*, and *Sugar Bottom*, containing altogether 1671 acres; and having in virtue of that application afterwards, on the 11th of November 1762, by the judgment of the judges of the land office, obtained an order to have patents for the said lands, and in virtue thereof did obtain grants for all the said lands, thereby leaving only 1337 acres of land surveyed for *Bladen* in virtue of the said warrant for 3000 acres, to wit, *Pleasant Valley* 300 acres; *Walnut Bottom* 500 acres; *Dispute* 285 acres; *Three Spring Bottom* 12 acres, and *Hunt the Hare* 240 acres; the application of the 2012 acres of land, for which *Bladen* made good rights as before stated, on the 3d of February 1746, ought and must be applied to make good

rights to *Pleasant Valley*, *Walnut Bottom*, *Dispute*, *Three Spring Bottom* and *Hunt the Hare.* The court were of opinion, and did direct the jury, that if they should find the facts as stated by the defendant, that the same were sufficient in law for the jury to find that as much of the warrant granted to *George Steuart* on the 3d of February 1746, as was necessary for the payment of the caution money on *Pleasant Valley*, was so applied on the 3d of February 1746; and that such application of warrant was a good payment of the caution money on the 3d of February 1746, which was then due on *Pleasant Valley.* The plaintiff excepted.

3. The defendant also prayed the opinion of the court, and their direction to the jury, that the patent granted on the 3d of September 1805, to *William, Thomson,* and *John Mason,* for *Pleasant Valley,* in point of law does relate to the certificate of survey of that land made on the 1st of June 1745, for *Thomas Bladen,* to give title to the said *William, Thomson,* and *John Mason,* and those under whom they claim, from the 1st of June 1745; and so far as the land mentioned in the patent for *Pleasant Valley* is included in the patent for *White Oak Level,* the former overreaches the latter, and is in point of law to be deemed the elder patent. The court were of opinion, and did direct the jury, that if from the evidence they are satisfied that the caution money was paid upon the certificate of survey of *Pleasant Valley,* by the application of as much of *George Steuart's* warrant, dated the 3d of February 1746, as was necessary to pay the same on or before the 4th of February 1762, that then the patent to *William, Thomson,* and *John Mason,* will operate by relation from the date of the certificate of *Pleasant Valley,* to transfer the legal estate to the grantees in all the lands contained within the limits of the grant, although the warrant to *Thomas Bladen,* in virtue of which the said survey was made, was irregularly obtained, as no other person had, in the intermediate time, between the obtention of the said warrant and the 4th of February 1762, acquired an interest in the said land to prevent such relation. But if the plaintiff can prove to, and satisfy the jury, that the certificate for *Pleasant Valley* was not returned to the land office before the 4th of February 1762, and was not in that office at that time, then, it is the opinion of the court, that the patent for *Pleasant*

1815.

M'Mechen
vs
The Mayor, &c.

*Valley* is not entitled to have relation back to the date of the certificate for the said land so as to overreach the plaintiff's patent for *White Oak Level.* The plaintiff excepted; and the verdict and judgment being against him, he prosecuted the present writ of error to this court.

The cause was argued before BUCHANAN, NICHOLSON, and MARTIN, J.

*T. Buchanan,* for the Plaintiff in error, on the *first* and *second* bills of exceptions, referred to *Hammond et al. Lessee vs. Warfield,* 2 Harr. & Johns. 152, 154, 155, 159.

*Martin,* for the Defendant in error.

THE COURT concurred with the County Court in the opinion given in the *second* bill of exceptions; but dissented from the opinions in the *first* and *third* bills of exceptions.

The court were of opinion, that the evidence offered to prove that the certificate of survey of *Pleasant Valley,* of the 1st of June 1745, was in the land office at the time when the survey of *White Oak Level* of the 3d of April 1762, was made, and the patent therefor of the 25th of December 1762, was obtained, ought to have been left to the jury. If the certificate of *Pleasant Valley* was not then in the office, *D. Ross,* who claimed under the survey of *White Oak Level,* was a purchaser without notice, and having obtained the first patent, it ought not to be defeated by permitting the patent of *Pleasant Valley,* of the 3d of September 1805, to relate to the certificate of that tract of the 1st of June 1745, and thus overreach the title under the grant of *White Oak Level.*

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.