### THE PEOPLE *against* GILBERT.

THIS was an action on the case, brought in *May*, 1819, against the defendant, as one of the managers of the *Union College Lottery*, for selling in 1816, tickets in the lottery, contrary to the provisions of the act for that purpose, and contrary to his duty as such manager, by reason whereof the amount of the tickets so sold by him had been wholly lost, &c.

The defendant pleaded, 1. Not guilty ; 2. Not guilty at any time within *six years* next before the filing of the bill of the plaintiffs against the defendant. There was a demurrer to the second plea and joinder.

*Oakley,* (Attorney General) in support of the demurrer. The people are not bound by a statute, unless they are specially named. The rule in *England* is, that the king is not bound by any statute, which affects any right, title or interest belonging to the crown, unless it is made to extend to him by express words. He is not bound by the statute of limitations, for no *laches* can be imputed to him. The maxim is *nullum tempus occurrit regi.* This rule is not founded on royal prerogative, but on principles of public policy, that the state should not suffer from the negligence of its officers and servants. On the same principle, the king cannot be nonsuited ; nor is he liable to pay costs. (4 *Bac. Abr.* Limitation of Actions (B.) 5 *Bac. Abr.* tit. *Prerogative, E.* 5. *E.* 6. *E.* 7. 5 *Comyn Dig. Parliament,* (R. 8.) *Co. Litt.* 119. *a. Plowd.* 143. *Hob.* 152. 154. 347. *Co. Litt.* 90 *b.* 139 *b.*) These are privileges attached to the sovereign. The people cannot attend to their rights, except through their officers. They ought not, therefore, to suffer by the lapse of time, or the negligence of those officers. All the reasons in support of this rule, in the case of a king, apply with greater force here, where the people are the sovereign.

*T. A. Emmet,* contra. *Nullum tempus occurrit regi,* is the maxim of *Prerogative.* The constitution of this state, (*Art.*

The People, not being named in the *fifth* section of *the act for the limitation of criminal prosecutions, and of actions at law.* (1 *N. R. L.* 184. sess. 24. ch. 183.) are not bound by it, and may bring a personal action at any time.

XXXV.) has abrogated all the prerogatives claimed by the king of *England.* The legislature have enacted limitations as to every form of action, and to devest the people of every thing which resembled royal prerogative. The people can bring no action but what is given to them by the act. The sovereign, as such, can bring no action, but what is specially authorised by law. Then, when the law gives an action to the people, it must be subject to the previous limitation annexed to such form of action. The king of *England* is bound by all statutes for the public good, and to prevent injury or wrong, though not named. (11 *Co.* 74, 75.)

*Oakley,* in reply, said, that the constitution abrogated only those parts of the prerogative which were exercised over this state as a colony. The statute does not give this action. The maxim, that *nullum tempus occurrit regi,* is not founded on the principle of its being a personal attribute of the sovereign; but of its being a political prerogative, for the security and benefit of the people.

WOODWORTH. J. delivered the opinion of the Court. By the common law, there was no stated or fixed time, as to the bringing of actions. Limitations are created by, and derive their authority from statute. (4 *Bac. Abr.* 461.) In *England,* it is held, that the king is not bound by the statutes of limitation; that no laches can be imputed to him, and whenever it occurs he may rely upon his privilege, " *quod nullum tempus occurrit regi.*" (5 *Bac. Abr.* 561, 562. tit. *Prerog.* 3 *Inst.* 188.) The reason of the rule is founded on the presumption, that the king is employed in the affairs of government, and ought not to suffer by the negligence of his officers. In a representative government, where the people do not, and cannot legally act in a body, where their power is delegated to others, and of necessity must be exercised by them, if exercised at all, the reason for applying the maxim is equally cogent. When the people of this state succeeded to the rights of the king of *G. B.* and became an independent government, was not this principle of the common law incorporated into the system of our jurisprudence ? By the 35th article of the state constitution, we adopted

the common law of *England*, so far as it formed the law of the colony of *New-York*, on the 19th day of *April*, 1795. After this recognition, the people of this state, as the supreme power, were entitled to claim the benefit of it in the same manner, and to the same extent, that it had been applied in *England*. On the ground of expediency and public convenience, this was necessary; as an attribute of sovereignty, it was equally important to be preserved. By the adoption of the common law of *England* in this state, the people acquired the right and privilege now contended for by the counsel for the plaintiffs. That such has been the construction by the legislature of this state, cannot well be questioned : By the " *act for the limitation of criminal prosecutions, and of actions at law,*" (1 *N. R. L.* 184.) the people limit their right to sue for lands, tenements and hereditaments to forty years; but in respect to personal actions they are silent, unless the 5th section, which relates to personal actions, should be construed so as to include the people when they prosecute. The people are not named in the latter section, and when not named, are not bound by an act of limitation any more than the king of *England* would be. The act shows that this must have been the intent of the legislature. Why should they specify the limitation in the case of real property, and prescribe none in personal actions ? It is evident that they acted under a conviction, that the rights of the people could not be barred, unless by statute, nor even then, unless they were particularly named. The omission, then, to limit personal actions, leaves them to the operation of the common law. It is further evident from the statute concerning costs, that the same rule of construction applies. The people are not liable to pay costs when they fail, but they recover costs when they succeed : Why is this ? The act concerning costs, (1 *N. R. L.* 343.) allows costs to the defendant, with a single exception, in cases where the plaintiff might have costs had he succeeded ; but it has never been contended, that a defendant could recover costs against the people. The reason is the same as in the case before us; they are not included in the general expressions, nor was it intended they should be. Until the legislature have limited the period within which the

ALBANY,
August, 1820.

THE PEOPLE
v.
GILBERT.

ALBANY,
August, 1820.

people may bring suits, the time is indefinite. That they have not made any statutory provision, except in the case stated, and that the people are not included under the act limiting the time for bringing personal actions, has, I think, been satisfactorily shown. In the case of *Stoughton et al.* v. *Baker & Vose*, (4 *Mass. Rep.* 522.) Chief Justice *Parsons* adopts the principle contended for by the plaintiff's counsel. One of the questions in that case arose on an ancient grant, which was under implied limitation. The grant was made in 1634. It was contended, that the defendant having been so long possessed of the estate, the state had no right to interfere, and could not now secure the benefit of the limitation by any legal remedy. The Chief Justice observes, " the limitation is not extinguished by any inattention or neglect in compelling the owner to comply with *it,* for no *laches* can be imputed to the government, and against it no time runs so as to bar rights." The result of my opinion is, that the demurrer is well taken, and that the plaintiffs are entitled to judgment.

Judgment for the plaintiffs.