## Commonwealth *against* Baldwin.

A confession of judgment, " sum to be liquidated by attorney," operates as a lien upon the defendant's real estate, although not afterwards liquidated.

A judgment in the name of the treasurer, for the use of the commonwealth, is substantially a judgment of the commonwealth, so as to exempt it from the operation of a statute, limiting the period for which a judgment shall continue a lien.

The lien of a judgment in favour of the commonwealth is not lost by lapse of time.

FROM the common pleas of *Alleghany* county.

This was an appeal from the decree of the common pleas, appropriating the proceeds of the sale of the real estate of *Baldwin*. A suit was brought to January term 1810, in the name of " *the Treasurer for the use of the commonwealth of Pennsylvania,*" against *Baldwin*, in debt for 10,201 dollars. " 5th April 1816, Mr *Baldwin* confesses judgment, sum to be liquidated by attorneys." No liquidation was ever made. When this judgment was entered, the defendant was seised of certain lands, which subsequently, on the 19th September 1816, he mortgaged to the Bank of Pennsylvania. Upon the sale of these lands, in 1830, the money was brought into court for appropriation, when the questions arose :

1. Did the judgment ever operate as a lien ?

2. If it did, is the lien lost by lapse of time ?

3. If the state be exempt from the operation of the acts respecting the revival of judgments, is a judgment in favour of the treasurer, who sues for the use of the state, also exempt?

*T. B. Dallas,* for appellant, cited 2 *Atk.* 385 ; 16 *Serg. & Rawle* 347 ; 11 *Serg. & Rawle* 94 ; 5 *Cranch* 88 ; 15 *Serg. & Rawle* 177 ; 9 *Cranch* 203 ; 3 *Wheat.* 631 ; 2 *Cranch* 386 ; 2 *Overton* 118 ; 1 *Dall.* 178 ; 4 *Serg. & Rawle* 166 ; 2 *Peters's S. C. Rep.* 662 ; 6 *Com. Dig.* 28 ; 1 *Black. Comm.* 298 ; 7 *Dane's Dig.* 426 ; 1 *Call* 194, 475 ; 3 *Call* 220.

*Brackenridge,* contra, cited, 2 *Serg. & Rawle* 142 ; 16 *Serg. & Rawle* 348 ; 5 *Binn.* 77 ; 3 *Serg. & Rawle* 291 ; 16 *Serg. & Rawle* 250 ; 18 *Johns.* 227 ; 9 *Wheat.* 735 ; 1 *Peters's S. C. Rep.* 326.

*Ross,* in reply, cited, *Act of* 28th *March* 1806 ; *Levinz* 71, 72, 73 ; 1 *Bac.* 149 ; *Moore* 672 ; *Plowd.* 136 ; 1 *Dall.* 58.

The opinion of the Court was delivered by

GIBSON, C. J.—In a monarchy, the exemption of the sovereign from the operation of statutes in which he is not named, is founded in prerogative ; and hence it is supposed, that no such exemption

[Commonwealth v. Baldwin.]

can be claimed, for a sovereign constituted of the people in their collective capacity. It is certain, that so much of the prerogative as appertained to the king by virtue of his dignity, is excluded by the nature of our government, which possesses none of the attributes of royalty; but so much of it as belonged to him in the capacity of *parens patriæ*, or universal trustee, enters as much into our political compact, as it does into the principles of the British constitution. Why should it not do so peculiarly, where the maxim *salus populi* is the predominant principle of a government, to whose operations and well being, the prerogative is as essential as to those of a monarchy? The necessity of it, in regard to statutes of limitation, is peculiarly apparent. The business of every government is necessarily done by agents, chosen, in a republic, by the people, it is true, but still no more than agents, and chosen certainly with no greater attention to the qualification of vigilance, than are the agents of an individual, whose utmost care in the choice of them is excited by the interest which he has directly in the event; and the frequency of miscarriage in any business, managed even by these, need not be pointed out. There is a perpetual tendency towards relaxation, where exertion is not invigorated by the stimulus of private gain; and this is the greater where the functions of the officer are to be performed, not under the supervision of an employer immediately concerned, but before the eyes of those who have no other interest in the business, than the remote stake which they have in the public prosperity. To some extent, therefore, and in proportion to the want there happens to be of systematic accountability in the respective departments, remissness of its ministers will be found in every government; and it is a principle, not only of great practical value, but of the first necessity, that the legislature shall not be taken to have postponed a public right to that of an individual, unless such an intent be manifested by explicit terms (as it has been in the order of paying a decedent's debts), or at least by necessary and irresistible implication. In the *United States* v. *Kirkpatrick*, 9 *Wheat.* 720, and the *United States* v. *Vanzandt*, 11 *Wheat.* 184, it was ruled that the laches of the public officers, however gross, does not discharge a surety from an official bond; and the principle of these cases was again recognised in *Dox* v. *The Postmaster-General*, 1 *Peters's S. C. Rep.* 326. In the construction of statutes of limitations, this salutary principle has been retained, I believe, by the courts of all our sister states; at least, I have not found a decision by any of them inconsistent with it, while by many it has been distinctly asserted. It was thus held in *Weatherhead* v. *Bledsoe*, 2 *Tennessee Rep.* 352. In Kentucky, the distinction which I have intimated, has been taken between the prerogative which relates to the government, and that which relates to the person of the king; by reason of which, the state was held not to be barred in a personal action by a statute in which it was not named. *Commonwealth* v. *M'Gowan*, 4 *Bibb* 62. In the case of *Nimmo* v. *The Commonwealth*, 4 *Hen. & Munf.* 57, it is said that the

[Commonwealth v. Baldwin.]

English maxim *nullum tempus*, has been adopted in Virginia; and that statutes of limitations do not extend to the commonwealth, in civil suits, not founded on any penal act in which the commencement of the action is expressly limited; on which principle it was determined, that no length of time bars the commonwealth from having execution of a judgment, or subjects her to the necessity of suing out a *scire facias*. The same principle ruled the cause in *Kemp* v. *The Commonwealth*, 1 *Hen. & Munf.* 85, which was the case of a personal demand prosecuted by motion—a mode peculiar to Virginia; and there are, I believe, other decisions to the same effect in that state. In Maryland, the doctrine is distinctly asserted, in *Cheny* v. *Ringgold*, 2 *Harris & J.* 87; *Hall* v. *Gittings*, 2 *Harris & J.* 112; *Stewart* v. *Mason*, 3 *Harris & J.* 531, and perhaps some other cases: as it is in New York, in *The People* v. *Gilbert*, 18 *Johns.* 227, and *Wilcox qui tam* v. *Fitch*, 20 *Johns.* 422. In *Stoughton* v. *Barker*, 4 *Mass.* 428, Chief Justice *Parsons*, and all the judges of the supreme court of Massachusetts held, that a condition or limitation for the benefit of the public is not extinguished by any inattention or neglect, in respect of compelling the owner to comply with it. There may be decisions to the same effect in other states, which have escaped my research; but those already cited would be entitled not merely to respect, but a commanding influence, even were the question in Pennsylvania an open one. We have, however, but a single case, in which the naked point was directly presented for adjudication. The public lands have been open to entry for the purpose of settlement; and the possession of the seller indicating his assent to become purchaser of the title on the terms held out, has been under, instead of being adverse to the commonwealth. Hence it might seem, from a cursory view of *Morris* v. *Thomas*, 5 *Binn.* 77, and *M'Coy* v. *Dickinson College*, 4 *Serg. & Rawle* 302, that those cases were thus determined, not because there was no statute to bar the commonwealth, but because there was no adverse possession. But in *Bagley* v. *Wallace*, 16 *Serg. & Rawle* 245, the maxim was applied to lands on which the entry of the defendant was an unequivocal trespass, and the exemption of the commonwealth put expressly on the ground of her prerogative as a sovereign. And the same principle seems to have been held in *The Commonwealth* v. *M'Donald*, 16 *Serg. & Rawle* 400, where it was determined that the adverse possession of part of a street, for twenty years, which, in analogy to the statute of limitations, bars the franchise of an individual, did not bar the public right of way, and, undoubtedly, because there is no statute to bar the public in any case, from which an analogy could be drawn. Without, then, pretending to fix its limits, in all cases, it may be safely asserted that this prerogative is a principle of our government, and a part of the law of the land.

As to the remaining points, it is not to be doubted that, though this suit is in the name of the treasurer, the commonwealth is the actual party, and entitled to insist on her prerogative. The treasurer

[Commonwealth v. Baldwin.]

is but a trustee to her use : and the nature of the judgment in her favour presents a question of no greater difficulty. It was for a sum certain, in the first instance, and consequently final. This feature was wanting in the *Philadelphia Bank* v. *Craft,* 16 *Serg. & Rawle* 347, in which the judgment was rendered not even for a nominal sum. The law of the subject is satisfactorily stated in *Lewis* v. *Smith,* 2 *Serg. & Rawle* 155, where it was determined, that if on a confession of judgment, the demand is in the nature of a debt which may be ascertained by calculation, it is sufficient to enter judgment generally, which, in contemplation of law, is for the amount laid. Here the action being in debt at the common law, was for a specific sum ; and even if a declaration were not filed, the judgment would be rendered certain by relation to the writ. Were it otherwise, every judgment by default, in an action of debt for a penalty which is never the real debt, would be treated as interlocutory ; yet, I believe it has never been doubted, that such a judgment binds the lands of the debtor, even though it were a part of the terms that all payments made were to be allowed by the prothonotary.

ROGERS, J. and ROSS, J. took no part in the judgment, being stockholders in the bank.

The plaintiff had leave to take the amount of the judgment out of court.