Casey, Cb. J.,
dissenting :
Whether the claimants can ho witnesses in their own cases, in this court, is a question of great importance, as it meets us at the threshold of almost every case. The solution of it depends upon the interpretation and application of the legislation of Congress upon the subject. By the act of the 6th of July, 1862, (12 Stat., 588,) it was enacted : “ The laws of the States in which the court shall be held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, in equity, and admiralty.” This left the admissibility of the witness in each case to depend upon the law of the State where the United States court was being held at the time. If the State has retained the rules of the common law, under this act, of course, all the parties interested in the event of the suit, and the parties to the record, are excluded. If, on the other hand, the legislation of the State has abolished the common law restrictions upon the admissibility of evidence, they would he admitted.
*606 On the 2d of July, 1864, an act was approved entitled “An act relating to the law of evidence in the District of Columbia.” That law was restricted in its action and effect to this District, and embraced “the trial of any issue joined, or of any matter or question, or on any inquiry arising in any suit, action, or other proceeding in auy court of justice in the Distiict of Columbia, or before any person having, by law or by consent of parties, authority to hear, receive, and examine evidence within said District; the parties thereto, and the persons in whose behalf any such action or other proceeding may be brought or defended, and any and all persons interested in the same, shall, except as hereinafter excepted, be competent and compellable to give evidence, either viva voce or by deposition, according to the practice of the court, on behalf of either or any of the parties to the said action or other proceeding.” A proviso is added against parties being compelled to give evidence against themselves in criminal cases, and protecting husband and wife from being called upon to testify against each other, or to disclose communications made during coverture.
In the act making appropriations for the civil expenses of the government, approved the 2d of July, 1864, (13 Stat., 351,) it is provided in the 3d section of that act, “ That the sum of one hundred thousand dollars is hereby appropriated, out of any money in the treasury not otherwise appropriated, for the purpose of meeting any expenses in detecting and bringing to trial and punishment persons engaged in counterfeiting treasury notes, bonds, or other securities of the United States, as well as the coin of the United States : Provided, That in the courts of the United States there shall he no exclusion of any witness on account of color, nor in civil actions, because he is a farty to, or interested in, the issue tried."
The 1st section of the act approved the 3d of Marclu 1865, (13 Stat., 533,) enacts : “ In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court.” This statement embraces and exhibits all the legislation I have been able to find by Congress upon the subject. And while it is admitted that it establishes a uniform rule for the courts of the United States in cases arising between individuals or corporations, it is denied that it extends to or affects the United States as a party in auy cause. The grounds of this exemption are based upon the sovereign character of the United States, and upon the maxim that *607 a statute does not apply to or affect them, unless they are specifically named therein. The rule that the sovereignty or government is not included in, or subject to, the provisions of a statute unless expressly named in, and referred to, is not one of universal application. It has many marked exceptions. The rule itself is derived from the common law of England, and was intended as a safeguard of the rights and prerogatives of the British Crown. These were held to be unaffected by any statute, unless there were express words, or clear implications, that Parliament intended they should be so applied. To a certain extent the rule has been adopted in this country, and the exemptions made to apply to the national and State governments. Thus a set-off cannot be maintained against a State under a statute conferring that right in general terms upon all defendants. So the statute of limitations does not run against the state, nullum teiiypus ocurrit regi. Laws limiting and restricting liens do not operate against the State unless expressly named. So there are many other instances that might be enumerated in which the rights of the sovereign are not affected by the general words of a statute.
. But the rule of exemption is subject to many limitations, restrictions, and exceptions. Thus it does not apply to statutes made to provide for the poor, to found or advance charities, to sustain religion, to suppress fraud, maintain the truth, and promote justice and right, for these are among the principal objects for which governments are instituted among men ; and just governments and sovereigns feel themselves called upon to further and promote these great purposes by their examples, as well as to enjoin and enforce them by precept. Thus in 5 Rep., 14, (b,) a lease made to the Queen by colleges, deans, chapters, &c., contrary to the Stat. 13 Eliz., ch. 10, was held to be restrained by that statute, although the sovereign was not named in it. And one of the reasons given for the judgment is : “ In divers cases the King is bound by act of Parliament, although he be not named in it, nor bound by express words ; and therefore all statutes made to suppress wrong, or to take away fraud, or prevent.the decay of religion, shall bind the King, although he be not named therein, for religion, justice, and truth are the sure supporters of the crowns and diadems of kings.”
In 1 Woodeson’s Leet., pi 31, the general doctrine of the exemption of the sovereign is stated, and acts for the advancement of religion, to provide for the poor, and to prevent wrong, are mentioned as exceptions. •
The same doctrine is held and maintained in 2 Inst., 681; 5 Reports, 14, (b;) Co. Litt., 344, (b;) 2 Inst., 353, 354; in Rex v. The Arch *608 bishop of Armagh, Strange, 581; William v. Berkley, Plowden, 227; in the great case of the Magdalen College, 11 Reports, 70. The same principle is maintained and elaborated with all the learning and ability of Coke. The conclusion of the whole matter is summed up when he says: “ The King shall not be exempted by construction of law out of the general words of acts made to suppress wrong, because he is the fountain of justice and common right. And the King, being God’s lieutenant, cannot do wrong: Solum rex hoc non potest facere, quod non potest injuste agere.”
The act of Congress of the 2d July, 1862, relating to evidence in the District of Columbia, is almost a literal transcript of the 14 and 15 Viet., cap. 99. The latter act came under review in the case of the Attorney General v. Radloff, 10 Exch. Rep., 84; that was an information to recover the penalty of treble the value of the goods smuggled, under the act of 8 and 9 Viet., cap. 87. The 82d section contained this provision : “ That all penalties and forfeitures incurred or imposed by this or any act relating to the customs, or to trade or navigation, shall and may be sued for, prosecuted, and recovered by action of debt, bill, plaint, or information, in any of her Majesty’s courts of record.” It also provides that the penalty may be recovered by summary conviction. On the trial of the case before Lord O. B. Pollock, the defendant’s counsel proposed to call the defendant himself as a witness in support of the defence. This was objected to on the part of the Crown, and the objection sustained, on the ground that the case was, in substance and effect, a “ criminal proceeding,” and so within the exceptions contained in the act itself. A rule nisi was granted for a new trial, and the cause was fully argued before the court in banc. During the argument., one of the counsel insisted that the Crown was not bound by the act, the Queen not being named in it. Pollock, O. B., remarked, “ in such cases, the Grown is not bound as to its person or property, but is bound with respect to the administration of justice.” The judges differed in their conclusions; were equally divided, and delivered opinions seriatim. But none of them even allude to the ground here set up. It was placed by those opposed to the admission of the testimony upon the ground that the witness was excluded on the words, of the statute. The whole contest was, whether it was a civil or criminal proceeding. No decision was reached, and the rule was dropped. The cases of Rex v. Wright, 1 Ad. & EL, 434, and De Bode v. Regina, 14 Jurist, 970, decide nothing that reflects any light on this case. (See 1 Kent’s Com., 507; Com. Dig. tit. Parl. R., S.; 15 East., 333; *609 6 Term Rep., 314; 2 Mason’s Rep., 314; 1 Watts, 55; United States v. Kirkpatrick, 9 Wheat., 720; People v. Rossiter, 4 Cowen, 143.)
To my mind it is entirely clear that the objects and purposes of this act bring it distinctly within the exception. The acts relate to the administration of justice. They are intended to advance right, and to elicit truth from parties who were heretofore excluded from testifying. To settle controversies, to maintain right, to vindicate the law, and thus promote social order and personal security, are among the most important and primary objects for which governments are instituted. Whenever these are ignored or neglected, government itself must become feeble and inefficient, if not contemptible. As these are among the fundamental objects and purposes of government, and necessary to its own preservation and efficiency, it would be strange, indeed, if the government were excluded or relieved from laws made to promote or further them.
It is an error to say that the exclusion of witnesses on account of being parties or interested in the event cannot be considered a wrong, or their admission an advancement or promotion of justice, because such exclusion has existed for centuries under the sanction of law. This argument would be equally effectual as applied to any other legal .or political reforms. Special pleadings, the numerous absurd fictions of the old English law, which were often permitted to defeat the ends of justice; the remnants of feudal tenures, and- the numberless absurdities and crudities which the enlightened progress of modern times has swept and. is sweeping away, could have pleaded the same prescriptive rights, and claimed immortality by virtue of centuries of toleration. But to introduce and establish such rules is the prerogative of the lawmaking power. It is a matter of which they are exclusively to judge. The courts are to administer these rules, and to give them force and effect according to the views and intentions of the legislature. And we are not to presume that they were mistaken, or to refuse to give full effect to the law, because we may differ as to its policy or propriety, or even doubt whether it will accomplish the end proposed or intended. In the present case there is no just reason to doubt the wisdomor policy of the law. Some of the most enlightened states in the world have been pioneers in this reform. And the nearly unanimous judgment of the profession, both at the bar and on the bench, has sanctioned and approved the rule. I cannot think that in framing a general rule of law of this character, establishing it as the guide of every court, making it universal, it could have been intended or even thought of that the government itself should_be excluded from the benefit or the observance of the rule.
*610 But 1 do not consider it necessary to invoke this principle, nor to argue that it falls within those exceptions. I hold that the United States are bound by the law, and that the evidence is admissible, because they are expressly named in the act. In the one act the terms used are, “ on the trial of any issue joined, or of any matter or question, or on any inquiry arising in any suit, action, or other proceeding in any court of justice in the District of Columbia;” the general act says, “ in the courts of the United States there shall be no exclusion of any witness,” &c. With these acts before us, can we say that the United States are not named in them ?
The courts of the United States are a part of the government of the United States ; a co-ordinate branch with the legislative and executive. As such they represent a part of its dignity, power, and sovereignty, and constitute, in every sense, a necessary and essential part of the government itself; for the Constitution provides that “The judicial power of the United States shall he vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish.” The whole judicial power of the nation is vested in those courts. It can reside nowhere else. Even Congress cannot vest it in or confer it upon any other body, individuals, or department. These courts represent, in the administration of justice and the enforcement of right, and the maintenance of social order by civil process and penal sanctions, the sovereignty and power of the people of the republic. And when we speak of the “ courts of the United States,” it is but another term or designation for the government of the United States, as it is constituted and displayed in one of its great departments. To prescribe a general rule of evidence in judicial proceedings for the courts of the United States is to prescribe that rule for the government of the United States; for in all cases falling within the judicial power of the United States those courts alone, and exclusively, represent the United States in their corporate or national capacity; for the power and jurisdiction of those courts is full, plenary, and exclusive. It is the government that establishes this rule by Congress. It is the same government that is to carry it into effect through another branch or department. It is a rule established to guide, control, and direct, in the matter to which it relates, the operations of the government, and it would be strange, indeed, if the government were not affected and bound by its provisions.
But let. us examine whether the acts upon their face do not show that they were intended to include the United States as well as private parties. The one act admits “ The person in whose behalf any such *611 action or other proceeding may have been brought or defended, and .any and all persons interested in the same;” the other enacts that, “In the courts of the United States there shall be no exclusion of any witness on account of color, nor in civil actions, because he is a party to or interested in the issue tried.” On the 12th of July, 1862, another act was passed, which prescribes, “ In all judicial proceedings in the District of Columbia there shall be no exclusion of any witness on account of color.” If the doctrine contended for is correct, that these acts do not extend to the United States, because the acts do not say in plain and explicit terms that the government shall be included in and affected by their provisions, then it is plain that no persons of color can be admitted to testify against the United States in any judicial proceeding in the District of Columbia, nor in any court of the United States where they have hitherto been excluded by local laws of the States, and which rules were adopted for the courts of the Union by congressional enactment of the 6th July, 1862, and by the 34th section of the judiciary act of 1789. It will follow, then, that the old law of Maryland, excluding colored persons from testifying, is still in force in this District, so far as the'United States is concerned. This will exclude such persons as witnesses for the defence in every criminal case; for in all such cases the United States is a party, the witness is offered against them, and they may interpose the objection and claim the exemption. The party to the action and the colored witness stand exactly upon the same ground. What excludes the one equally bars the admission of the other. I feel perfectly safe in affirming that such was not the intention and object of Congress in this enactment; and that such a construction would defeat and prevent the main purpose and end Congress had in view in these enactments. If it embraces and admits persons of color in such cases, it must, of necessity, admit these parties. The enactments are in the same law, in the same terms, in the same sentence, and must be governed by the same rules of interpretation. The law is not a special one. It is made in general terms, and for a great general purpose. It is not to affect individual persons or mere private rights and parties, but is announced and promulgated as a rule of public law, controlling and governing the rights of all who may be parties in any court of the nation.
I find nothing in the act of the 3d of March, 1863, reorganizing this court, which militates in the least against this construction. The statutes we are considering were enacted subsequent to that act. The 8th section, allowing the United States to examine the claimant as a ' witness, was a step forward. It went, too,- in the very direction of *612 these laws. Nor do these we have quoted operate, as is supposed, as a repeal of that section. It remains in full force. Its provisions can be invoked at any time by the Solicitor, and may be necessary whenever he is in doubt whether the claimant will offer himself. He is not to introduce it unless he sees proper. That Congress has gone further, and said the claimant may use such testimony on his own behalf, in nowise affects the principle. It does not operate as a repeal of the law, but as a legislative extension of the privilege. They both constitute and mark stages in the progress of the principle. Nothing is more usual. Great political, civil, and social reforms are generally gradual and progressive. They are not ordinarily reached by a single bound. They are attained, in most cases, by successive steps and repeated efforts. The legislation we are contemplating is at once an example and illustration of this theory. The 6th section of the act of the 6th of July, 1862, went so far as to say that the law of the State in which the United States was sitting should furnish the rule for the exclusion or rejection of witnesses. Then came the 8th section of the act of the 3d of March, 1863, empowering the United States to compel a claimant in this court to testify in his own cause .on their behalf. Next we have the act of the 2d of July, .1864, the enaetment authorizing the admission of parties, &c., in the District of Columbia; and a simultaneous one which does away, in all the courts of the nation, with all objections of color, interest, or policy. So intent was the legislature upon going to the full extent of the rule, that in the eagerness to attain it the usual savings and exceptions, almost universally adopted, were overlooked or forgotten. These were supplied by the act of the 3d of March, 1865. (13 Stat., 533.)
As to the objection of the want of mutuality, I do not regard it as sustained by the facts. The government of the United States has no legal similitude to that of a natural person. It acts through and is represented by its officers and agents; and in all matters which may become the subject of contest in a court no one is excluded as a witness because he is an officer of the United States, or because, as such, he made the bargains, contracts, or agreements out of which the controversy arises. In all cases of this kind the claimants have been excluded, while those with whom they made the contracts, or transacted the business, have been permitted to testify on behalf of the government. In this respect it appears to me that the want of mutuality is rather to be charged to the old rule than to the provisions of the act. In the case of suits by or against executors *613 and administrators, the opposite party is only excluded from testifying as to the transactions with, or declarations of, the testator and intestate, because the counteracting testimony of the other party cannot be had. Where the transaction was with the executor or administrator himself, the rule of exclusion does not apply, and both parties can be witnesses. So in regard to corporations. A corporation, not being a natural person, cannot be a witness ; yet the other party is always admitted as against it; and this upon the very obvious reason that a corporation always acts through and by its officers and agents, and they can be witnesses in behalf of the body politic they represent.
Upon every ground, therefore, I am of opinion that the party claimants, under the acts of Congress cited, have the right to testify in their own cases, and that the evidence in this case ought to be admitted.