# WHEELING.

## HOGE et al. v. BROOKOVER et al.

Submitted June 17, 1886.—Decided July 7, 1886.

1. Chap. 195 of the Acts of 1872 (which applies to this case) gave effect to the lien of a judgment against a sheriff from the time he was served with notice or summons, pursuant to which the judgment was afterwards rendered, and declared void as to such judgment any transfer or assignment of his property made after the service of such notice or summons ; therefore a deed of trust executed by the defaulting sheriff after such service of summons or notice is under the operation of such statute void as to such judgment.

   Quære—Does the act requiring judgment liens to be docketed in order to preserve them as against purchases of the property, to which they are attached, affect a judgment in favor of the State ?

2. Sec. 39 of ch. 18 of the Acts of 1882 operates prospectively and does not affect a case arising under ch. 195 of the Acts of 1872.

*G. H. Umstead* for appellant.

*R. McEldowney* and *McCoy & Jacob* for appellee.

JOHNSON, PRESIDENT :

On May 9, 1879, the State of West Virginia in the circuit court of Ohio county recovered a judgment for $2,602.48, with twelve *per cent.* interest and costs against William M.

Brookover, sheriff of Wetzel county, and his sureties. This judgment was docketed on the judgment-lien docket of Wetzel county December 21, 1880. William Brookover had years before this bought a house and lot in New Martinsville, the county-seat of Wetzel county, for the sum of $1,300.00, of which he paid in cash or its equivalent $700.00, and had the property conveyed to his wife, Sarah Brookover. On March 29, 1877, said Brookover and wife conveyed said house and lot to a trustee to secure the balance of the purchase-money $600.00. In 1880 Brookover wished to borrow $500.00 to pay on the purchase-money and applied to his wife's uncle, Abner Hoge, for the loan, who said he did not have the money, but he could get it for him; and one Cyrus Adamson loaned William M. Brookover the money, and Brookover gave his note for said money with Abner Hoge surety thereon. On November 6, 1880, William Brookover and wife executed to W. S. Wiley, trustee, a deed of trust to indemnify and save harmless the said Abner Hoge as surety on said note for $500.00.

The sureties of said Brookover having paid over $1,000.00 on said judgment in August, 1882, filed their bill in the circuit court of Wetzel county against said Brookover, Sarah, his wife, Abner Hoge, Gabriel Leap, Josephus Clark, trustee, and others, setting up said judgment and other liens against the real estate of said W. M. Brookover, and alleging that said Brookover was the owner of lot No. 47, in said town of New Martinsville; that said lot had been bought and paid for by said Brookover, and by Gabriel Leap at the request of said Brookover, conveyed to Sarah Brookover, but the deed to her had not been placed on record; that she and her husband had executed a deed to Clark to secure the balance of the purchase-money to Leap, and that Brookover had borrowed $500.00 from one Cyrus Adamson, which he had paid on said purchase-money; and also exhibiting a deed from Sarah Brookover and her husband to W. S. Wiley, trustee, to save Abner Hoge as the surety on the $500.00 note given by Brookover to Adamson. The bill charges that Hoge had not paid a dollar of the purchase-money out of his own funds; that the deed to Sarah Brookover was a fraud upon the creditors of her husband; and that Brook-

over bought and paid for the lot, and in fraud of his creditors had it conveyed to his wife. The bill prayed that said deed to Mrs. Brookover and the two deeds of trust be set aside; that the said property be sold to satisfy said liens; and that the plaintiffs to the extent of their payments on said judgments in favor of the State be subrogated to the rights of the State, &c.

Both Brookover and his wife answered the bill denying the fraud charged. Abner Hoge answered the bill insisting that he had paid the $500.00 to Adamson, and that it was part of the purchase-money, and that he was by the deed of trust executed to Wiley on November 6, 1880, and admitted to record on November 8, 1880, entitled to be indemnified and saved harmless; that he purchased the last purchase-money note of $200.00 on December 27, 1881, of Gabriel Leap and took an assignment of the deed of trust to secure the purchase-money due and unpaid and claims that he had the first lien on the lot.

On January 6, 1883, the cause was heard on the pleadings and proofs; and the court decided that the deed from Leap to Sarah Brookover was fraudulent and void as to Brookover's creditors, and that said deed to Wiley, trustee, to indemnify Abner Hoge was void as to said creditors, and that the deed of trust for the purchase-money was void except as to said purchase-money, and the cause was referred to a commissioner to ascertain and report the liens and their priorities. The commissioner reported on September 16, 1883, the judgment due the State as the second lien; and that at that time after allowing credit for $1,048.00 paid by the plaintiffs thereon there yet remained of said judgment $2,931.72; that the first lien due Abner Hoge for purchase-money, as assignee for Gabriel Leap was $586.00 and $159.74, making in all $745.74. Then follow other judgments. The complainant, Jno. A. Hoge, excepted to the report of the commissioner, because the $500.00 paid by Abner Hoge to Adamson was reported as a lien prior to the judgment of the State.

On January 29, 1884, the court entered a decree holding that Sarah Brookover had no title to said lot, and that therefore she could not create a lien thereon by the deed of No-

vember 6, 1880, to indemnify Abner Hoge, and that said Hoge had no lien on said land by virtue of said deed, that Hoge did pay the balance of the purchase-money on said lot, which amounted principal and interest on September 18, 1883, to $158.80 and took an assignment of deed of trust, and that said sum is the first lien on said property; that the judgment due the State was the second lien, and then the priority of the other liens was fixed, and a sale of the property was ordered to pay the said liens. From this decree and the decree of June 6, 1883, the defendant, Abner Hoge, appealed.

The first assignment of error is, that the demurrer to the bill should have been sustained; that proper parties were not made to the bill and for other reasons not stated in the assignment. It seems to us that the bill is sufficient, and it does not appear, that any other parties were necessary. In the brief it is argued, that the decree was improper, because it does not appear what was paid by the complainants in gross or separately, and that the commissioner's report does not find these facts. The bill clearly alleges how much was paid by the plaintiffs and by whom; and the report ascertains, that this allegation of the bill is true.

It is objected that the decree does not ascertain what was paid by plaintiff nor provide for the payment to the plaintiffs of such amounts. It is not perceived how this can injure the appellant, and the court will direct the distribution of the fund, when it is within its reach. It ascertained the liens against the property and ordered the property sold to discharge them.

It is also assigned as error, that the cause was referred to a commissioner, before the parties were all before the court. If it could possibly have injured the defendant, even if this were so, it appears from the recital of the decree, that all the home-defendants had been served with process, and an order of publication had been executed as to the non-resident defendants.

The counsel for Abner Hoge insists, that the court erred in not disposing of the question as to the claim of Sarah Brookover submitted to the court by the commissioner. It is not pretended that the claim was a lien on the property; if the deed was fraudulent, and Sarah Brookover is not com-

plaining, and Abner Hoge is not injured by the omission. The claim was for services for keeping the jail.

It is assigned as error, that the deed to Sarah Brookover was held fraudulent. If this was an error, it was not to the prejudice of the appellant. But an inspection of the record will clearly show, that the deed was procured by Sarah Brookover and her husband with intent to defraud the creditors of said William Brookover.

But it is insisted, that the court erred in holding that the deed of November 6, 1880, was invalid and was no indemnity to the appellant, Abner Hoge, as the surety of William Brookover on the note to Cyrus Adamson. There is no sufficient evidence in the record to show that the said deed was executed with intent to defraud the creditors of Brookover. The $500.00 had been borrowed by William Brookover through Abner Hoge of Cyrus Adamson to pay to Leap on the purchase-money and was so paid. Instead of then taking an assignment of the purchase-money note or the deed of trust to the extent of the money paid, which he might have done Hoge permits the lien for the purchase-money to the extent of $500.00 to be discharged and contents himself with taking a deed of trust to indemnify him as the surety of Brookover on the note to Adamson. The position taken in the decree, that this deed of trust was void, because Mrs. Brookover had no title either legal or equitable in the lot and therefore could create no lien upon it, is untenable. It seems to have been overlooked, that this is not only the deed of Sarah Brookover but is also the deed of the husband William. He certainly had the right to create a lien on the lot, if the title was in him, and if the deed to Sarah was fraudulent as to creditors, still the two together could certainly make a valid trust-deed, that would create a lien on the land, and if it was not fraudulent as to the creditors of William Brookover, it certainly was valid, unless void because not recorded in time. The deed was on record more than a month before the judgment of the State was docketed. The deed was recorded November 8, 1880, and the judgment was docketed December 21, 1880. It is said that it is the rule, that the king shall not be restrained of a liberty or right, which he had before by the general words of an act of parliament, if the king is not named

in the act. But if the statute be intended to give a remedy against a wrong, to prevent fraud, tortious usurpation or the decay of religion, the king, though not named, shall be bound by it. Yet the authorities, which support the doctrine are mostly taken from times, in which the prerogatives were highly favored. (Dwarris on Statutes 151, and cases cited). In this country it has been held, that the general words of a statute do not include the government or affect its rights, unless such intention be clear and undisputable upon the face of the act. (Dwarris Stat. 151n).

Sedgwick on Stat. & Con. Law 36, says: "In England it is held, that words of a statute applying to private rights do not affect those of the Crown. This principle is well established, and is there considered indispensible to the security of the public rights. It has been recognized also in this country; and on this ground it was held in Pennsylvania in regard to Windmill Island, in the Delaware river opposite Philadelphia, though it was claimed under a legislative grant, that as the rights of the Commonwealth were not ceded by the act, no title was acquired as against the State. But in this country generally I should doubt, whether this construction could be safely assumed as a universal rule. The English precedents are based on the old feudal ideas of royal dignity and prerogative; and where the terms of an act are sweeping and universal, I see no good reason for excluding the government, if not specially named, merely because it is the government."

He further says, p. 395: "We have already had occasion to call attention to the force and meaning of the maxim "*nullum tempus occurrit regi*" (*ante* p. 105); and also to the general rule in the construction of statutes, declaring or affecting rights or interests, not to interpret them so as to embrace the sovereign power of the State, unless that idea be distinctly expressed or result by necessary implication. So in Mississippi it has been said to be the settled doctrine, that the general rules of a statute do not include the State or affect her rights, unless she be specially named, or it be clear and indisputable from the act that it was intended to include the State." In the note among other authorities he cites: *Josselyn* v. *Stone*, 28 Miss. 753; *United States* v. *Hoar*, 2 Mason 314; *Com-*

*monwealth* v. *Baldwin*, 1 Watts 54; *People* v. *Rossiter*, 4 Cow. 143; *United States* v. *Hewes*, Crabbe R. 307.

In *Commonwealth* v. *Baldwin*, 1 Watts 54, it was decided, that the lien of a judgment in favor of the Commonwealth is not lost by lapse of time. Gibson, C. J., said: "In a monarchy the exemption of the sovereign from the operation of statutes in which he is not named is founded in prerogative; and hence it is supposed, that no such exemption can be claimed for a sovereign constituted of the people in their collective capacity. It is certain that so much of the prerogative as appertained to the king by virtue of his dignity, is excluded by the nature of our government, which possesses none of the attributes of royalty; but so much of it as belongs to him in the capacity of *parens patriæ*, or universal trustee, enters as much into our political compact, as it does into the principles of the British Constitution. *    *   The necessity of it, in regard to the statutes of limitation is peculiarly apparent. *    * To some extent, and in proportion to the want, there happens to be a systematic accountability in the respective departments, remissness of its ministers will be found in every government; and it is a principle, not only of great practical value, but of the first necessity, that the legislature shall not be taken, to have postponed a public right to that of an individual, unless such intent be manifested by explicit terms, (as it has been in the order of paying a decedent's debts) or at least by necessary and irresistable implication. In the *United States* v. *Kirkpatrick*, 9 Wheat. 720, and the *United States* v. *Van Zandt*, 11 Wheat. 184, it was ruled that the *laches* of the public officers however gross, does not discharge a surety from an official bond; and the principle of those cases was again recognized in *Dox* v. *Postmaster General*, 1 Pet. S. C. Rep. 326. In the construction of the statutes of limitation, this salutary principle has been retained, I believe, by the courts of all the sister States; at least I have not found a clause in any of them inconsistent with it, while by many it has been distinctly asserted. It was thus held in *Wetherhead* v. *Bledsoe*, 2 Tenn. 352." He cites on same point: *Commonwealth* v. *McGovern*, 4 Bibb 62; *Nimmo* v. *Commonwealth*, 4 H. & M. 57; *Kemp* v. *Commonwealth*, 1 H. & M. 85; *Cheng* v. *Ringold*, 2 Har. & J. 87;

*Hall* v. *Gittings*, 2 Har. & J. 112; *Stewart* v. *Mason*, 3 Har. & J. 531; *People* v. *Gilbert*, 18 Johns. 227; *Wilcox* v. *Fitch*, 20 Johns. 442; *Stoughton* v. *Barker*, 4 Mass. 428; *Bagley* v. *Wallace*, 16 Serg. & R. 245; To the same effect is *Campbell* v. *Wheeling*, 12 W. Va. 36.

In *Josselyn* v. *Stone & Mathews*, 28 Miss. 753, it was held, that by the provisions of the general lien act of 1824 and the " abtract act " of 1841 the rights of the State are not affected, unless the State is specially included or by necessary implication, and the lien attaches to the property of the defendant in any county in the State; because the rights of the State on well settled doctrine are paramount to those of the individual citizen, and the State is not considered as embraced in a statute, unless such an intention is clearly manifest. Mr. Justice Fisher dissented and was of opinion that the act of 1841 in using the words " all judgments and decrees " clearly embraces those to which the State is a party, and that such was the policy of the law. There were but three judges on the bench; and Judge Handy for himself and Smith C. J. after quoting the statute (very similar to our statute on the subject) said : " It does not in terms or by necessary implication include the rights of the State, which upon well settled doctrine are paramount to those of the individual citizen and are not to be considered as embraced in the statute, unless such an intention is clearly manifest. *  *  We think that by force of it the provisions of the abstract act may apply to judgments rendered in favor of the State, and consequently the lien of the judgment in this case was in force in Hinds county from the date of its rendition." The very question was presented in that case, which arises here. One statute declares, that no judgment should be a lien, until it was duly enrolled or docketed; the other, that no judgment shall operate as a lien for more than two years. The judgment was not enrolled in Hinds county, the judgment debtor to the State became insolvent, and there was as here a contest between the State and individual creditors. The court held, that neither statute affected the State. In my opinion this position is sound, and founded on public policy.

The true reason why statutes of limitations and other statutes, in which the interest of the State by express terms or

necessary implication do not affect the interests of the State is, that through the remissness of public agents the public interests are liable to be neglected. Men do not look after public interests as closely as private individuals are supposed to look after their own. The public, unless the legislature by statute expressly or by necessary implication so directs, has more privileges than a mere private citizen. There is as much reason why recording statutes in the absence of an expression of legislative will should not affect the State, as that statutes of limitations should not affect it. In the case of *Calwell* v. *Prindle,* 19 W. Va. 605, the judgments considered were recorded in Virginia prior to the separation. The "docketing act" was held not to deprive the State of West Virginia of the judgment; but it was not held, that it was necessary that the State should docket its judgments in order to preserve the liens. The *quære* was propounded, whether the statute of limitations would apply. There is nothing in the case contrary to the position taken here, and the reasoning is in perfect harmony with our position. While the above is my opinion, yet we think it unnecessary to decide the question in this case, as there was a statute in force, at the time the deed of trust was executed, that effectually disposes of the case.

Our Legislature, on February 28, 1872, passed the following act: "That in any proceeding had under the provisions of chapter thirty five of the Code of West Virginia, against shiriffs or collectors and their sureties, or any or either of them, for moneys due the State, any transfer, assignment, or alienation of property, real or personal, or any judgment or decree obtained against, or suffered by such sheriff or collector, and their sureties or either of them, after service upon them respectively of summons or notice, shall be deemed fraudulent and void, as to any judgment that may be thereafter rendered in favor of the State in pursuance of such summons or notice." This goes much further than could be claimed for the common law; because it makes a judgment thereafter recovered a lien on all the property of sheriffs, collectors or their sureties or either of them from the time when they respectively were served with such notice or summons, pursuant to which the judgment was afterwards recovered. The policy of the State as manifested in this act

was effectually to prevent any fraud, by which she should be deprived of her revenue or debts due her. The statute stood without change until 1882 when it was amended by adding at the end of the section: "But this section shall not apply to a *bona fide* purchaser of any such property without notice." (Acts 1882, ch. 18, sec. 39).

This statute was in force, when the deed of November 6, 1880, was executed and recorded. The amended act of 1882 does not act retrospectively and could have no such effect. (*McCance* v. *Taylor*, 10 Gratt. 580). The deed was void as to the judgment of the State, as it was executed long after Brookover had been served with the summons or notice, pursuant to which the judgment was rendered. By force of the statute the judgment had priority over the deed. But the deed was not only declared void as to the judgment of the State but as to all the creditors of said Brookover. This is error, as the deed was void only as to the judgment of the State. It might be possible, that the property was worth enough to pay the purchase-money yet due and the State judgment and still be sufficient to pay the appellant's claim, but this is not probable. The record shows the property was purchased for $1,300.00 in 1876, and there is no evidence that it has since enhanced in value. The judgment having priority amounts now to about $3,000.00. Therefore we think it does not appear that the appellant is prejudiced by the error.

So much of the decree of June 6, 1884 and the decree of January 29, 1884, so far, and so far only as they and each of them declare the deed of trust of November 6, 1880, from Brookover and his wife to Wiley, trustee, for the indemnity of Abraham Hoge void as to the judgments of creditors of Brookover other than the State-judgment, are respectively reversed, but with costs to the appellees, the judgment-creditors, the parties substantially prevailing. In all other respects the said decrees are respectively affirmed.

AFFIRMED IN PART.     REVERSED IN PART.