## Blum's Estate. No. 3

*James J. Logan* and *John T. Logan*, for Commonwealth.
*Palmer C. Bortner*, for respondent.

GROSS, P. J., May 20, 1940.—In the audit of the first and final account of the administrator d. b. n. c. t. a. of the estate of Edward H. Blum, deceased, we awarded to Urgie McConnell, also known as Urgie McConnell Smith and Urgie McConnell Huett, who will hereinafter be referred to as Urgie McConnell, for servant's wages rendered to said decedent, the sum of $289.39.

At the instance of the Commonwealth, under the authority of The Support Law of June 24, 1937, P. L. 2045, in Blum's Estate (No. 2), supra, page 594, we substituted the Commonwealth of Pennsylvania, Department of Public Assistance, as claimant and marked said award to its use, to the extent of $170.40, being the amount of money advanced by it, partly under the Old Age Assistance Law of June 25, 1936, P. L. 28, and partly under the Public Assistance Law of June 24, 1937, P. L. 2051, for the support and maintenance of said Urgie McConnell from October 7, 1936, to February 8, 1938.

On April 11, 1940, Urgie McConnell filed her claim in this court asking for the protection given by the proviso in section 5 of the Act of April 15, 1845, P. L. 459, to laborers against the attachment of wages, and also the benefits granted to debtors under section 1 of the Act of April 9, 1849, P. L. 533, exempting from levy and sale on execution upon any judgment obtained upon contract and distress for rent, property of the value of $300.

It will be observed, and it has been held by our courts, that the privileges and immunities granted by the Acts of 1845 and 1849, supra, are, and must be, based upon some form of contractual or quasi-contractual relationship between the person who claims the benefits of said acts of assembly and the person against whom they are claimed.

The moneys awarded to Urgie McConnell were for wages due her by decedent and, of course, they are immune from attachment under the said Act of 1845, for a debt owing by her to an individual ,and, as between individuals, she would also be entitled to the benefit of sec-

tion 1 of the Act of 1849. Both of these acts are general and may be given effect in the orphans' court as well as in the court of common pleas.

The Commonwealth, by its answer, asserts that no such relationship as debtor and creditor in their ordinary sense was created between it and said Urgie McConnell, by the payment of assistance money to her for her support and maintenance, and, further, denies her right to invoke, as against the sovereignty of the Commonwealth, the rights given to her, as between individuals, in either of said acts of assembly.

The care of the indigent and poor people of the State is a governmental function of the Commonwealth. They become direct charges of the body politic for its own preservation and protection. As such, in the light of an expense, they stand exactly in the same position as the preservation of law and order. At common law, these recipients of the State's bounty are required to repay to the Commonwealth the moneys advanced to them: Boles' Estate, 316 Pa. 179; and this is so whether the obligation be regarded as contractual, quasi-contractual, or as an obligation inherent in the acceptance of State aid, growing out of their status or relationship as citizens of the State.

The Old Age Assistance Law and the Public Assistance Law both contain statutory declarations of this common-law liability and also confer upon the Commonwealth additional remedies to expedite and enforce the same. Section 5 of The Support Law, already referred to, supplies the remedy by which we substituted the Commonwealth as plaintiff in the award to Urgie McConnell.

There is no dispute that the Commonwealth may appropriate State money for the care and maintenance of its indigent and poor people, but such acts of appropriation are voluntary and do not create rights, duties, or obligations. There is no right in the beneficiary to the privilege: Collins v. Martin et al., 290 Pa. 388; and we are, therefore, convinced that the duty or obligation of

a recipient of State aid to repay the Commonwealth is basically founded upon his primal obligations to the sovereignty rather than the contractual relationship of debtor and creditor. Every debt, of course, is an obligation; but every obligation is not a debt: Commonwealth ex rel. v. Peterson et al., 100 Pa. Superior Ct. 600.

But aside from our opinion that the relationship between the Commonwealth and Urgie McConnell is not such a contractual relationship as is contemplated by the Acts of 1845 and 1849, we are of the further opinion that neither of said acts could, under any circumstances, be invoked against the Commonwealth.

The Supreme Court, in South Philadelphia State Bank's Insolvency, 295 Pa. 433, 438, speaking through Chief Justice Moschzisker, held:

"By the common law of England, at the time of the American Revolution, the king was entitled to have a debt due the crown paid before that of any of his subjects: Attorney-General v. Andrew, 1 Hardres 22, 145 Eng. Reprint 360. This privilege belonged to the king in the capacity of parens patriæ, or universal trustee (Blackstone's Commentaries, Sharswood's ed., vol. 1, pp. 238, 240), and passed to the State of Pennsylvania in its sovereign capacity: Com. v. Lewis, 6 Binn. 266, 271; Com. v. Baldwin, 1 Watts 54, 55; Booth & Flinn v. Miller, 237 Pa. 297, 307. For an excellent general discussion and citation of cases on this subject, see U. S. Fidelity & Guar. Co. v. Bramwell, 108 Ore. 261, 217 Pac. 332."

In Booth & Flinn, Ltd., v. Miller, 237 Pa. 297, 304, the Supreme Court says:

"It is a maxim of the common law that the King is not bound by any statute, if he be not expressly named to be so bound. It is inferred, prima facie, that the law made by the Crown, with the assent of the Lords and Commons, is made for subjects and not for the Crown". And on page 307, of the same case, the court further held:

"The State when acting in its sovereign capacity occupies a position entirely different and superior to that

of the citizen. It cannot be sued without its consent. The statute of limitations, without it is expressly so declared, cannot be invoked to defeat its claim as a creditor. It takes precedence over other creditors. It may forego its rights as a sovereign power and place itself on the same footing as one of its citizens, but unless the statutory language affecting the subject so declares it will not be presumed. The State cannot be deprived of its rights as a sovereign by inference, it must be done by appropriate constitutional or legislative action."

In Jones v. Tatham, 20 Pa. 398, 411, Mr. Justice Lewis, speaking for the Supreme Court, said:

"Words of a statute applying to private rights do not affect those of the state. . . . The general business of the legislative power is to establish laws for individuals, not for the sovereign; and, when the rights of the Commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily implied."

We are convinced that the principle involved in this case is the same principle as was involved in holding that the statute of limitations does not operate against the Commonwealth, and the argument of Chief Justice Gibson in Commonwealth v. Baldwin, 1 Watts 54, is apropos. The principle that legislative enactments presumptively affect only private rights and do not embrace the rights of a sovereign unless the sovereign is explicitly designated or clearly intended, has recently been stated by the Supreme Court with entire approval in Baker et al. v. Kirschneck et al., 317 Pa. 225, and in Commonwealth, etc., v. Dauphin County et al., 335 Pa. 177.

Both acts of assembly allowing the exemption are in derogation of the common law and must be strictly construed: Devers v. Scranton City, 308 Pa. 13. They are both general acts of assembly and cannot be used against the Commonwealth unless the intention to do so is clearly expressed within the acts themselves. We find no such intention expressed in either one of the acts of assembly.

Further discussion would seem to be unnecessary and we, therefore, enter the following decree:

And now, to wit, May 20, 1940, it is hereby ordered, adjudged, and decreed that the application or request of Urgie McConnell, also known as Urgie McConnell Smith and Urgie McConnell Huett, for the benefit of the exemption, provided in section 5 of the Act of April 15, 1845, P. L. 459, and in section 1 of the Act of April 9, 1849, P. L. 533, is refused and dismissed and an exception is granted to the applicant to the action of the court in this regard.