UNITED STATES (TESCHEMACHER v.). See Case No. 13,843.

=====

## Case No. 16,456.

### UNITED STATES v. TETLOW.

[2 Lowell, 159; 14 Int. Rev. Rec. 205; 6 Am. Law Rev. 575.] [1]

District Court, D. Massachusetts. Sept., 1872.

IMPRISONMENT FOR DEBT—STATE LAWS—DEBTORS OF THE UNITED STATES.

1. The act of congress of March 2, 1867 (14 Stat. 543), adopts the modifications, conditions, and restrictions upon imprisonment for debt then existing by the laws of the several states, and the course of proceedings which may thereafter be adopted therein.

[Cited in Low v. Durfee, 5 Fed. 258; Mallory Manuf'g Co. v Fox, 20 Fed. 410.]

2. The United States, as plaintiffs in an action at common law, are not exempt from the provisions of that act by virtue of their prerogative.

[Cited in Re Sanborn, 52 Fed. 585.]

3. The process and forms of proceeding adopted by congress from the state laws are binding on the United States.

4. The act of 1798, authorizing the secretary of the treasury to discharge poor imprisoned debtors of the United States, does not prevent

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission. 6 Am. Law Rev. 575, contains only a partial report.]

the act of 1867 from being availed of by a debtor imprisoned at the suit of the government. The remedy is cumulative.

F. Dabney, for the United States

T. K. Lothrop and R. R. Bishop, for defendant.

LOWELL, District Judge. The defendant [James Tetlow]. was arrested on mesne process at the suit of the United States, in an action of assumpsit for the amount of certain taxes assessed upon him as a manufacturer; and, having been surrendered by his bail, is now imprisoned on the writ. He duly applied to a commissioner of this court to take the oaths prescribed by Gen. St. Mass. c. 124; and the district attorney was duly notified, and attended the examination. The commissioner found him entitled to take the oaths, but refused to administer them, on the sole ground that a debtor to the United States is not within the act of March 2, 1867 (14 Stat. 543). This is the question now presented for decision.

The statute of February 28, 1839 (5 Stat. 321), enacted that no person should be imprisoned for debt in any state on process issuing out of a court of the United States, where, by the laws of such state, imprisonment for debt had been abolished; and that where, by a law of the state, imprisonment for debt should be allowed under certain conditions and restrictions. the same conditions and restrictions should be applicable to the process of the United States. By the act of January 14, 1841 (5 Stat. 410), the statute of 1839 was to be construed to abolish imprisonment for debt in all cases whatever, where, by the laws of the state, imprisonment for debt had been, or should be, abolished. These statutes were held not to be applicable to Massachusetts; because the poor-debtor law of that state of 1855 did not abolish imprisonment for debt, and so was not within the act of 1841, but was a law allowing such imprisonment under certain conditions and restrictions which brought it within the act of 1839, which was not prospective, and did not adopt future state laws. In re Freeman [Case No. 5,083]; Campbell v. Hadley [Id. 2,358]. It was further decided that a debtor who had been lawfully relieved from imprisonment upon his debts, under the general insolvent law of Massachusetts, was yet not entitled to have the execution modified so as not to run against his person; because the insolvent law of Massachusetts was neither a law abolishing imprisonment for debt generally, nor allowing it under certain conditions and restrictions, but one which abolished it only in its relation to certain individuals. Catherwood v. Gapete [Id. 2,513]. That case differed from Beers v. Haughton, 9 Pet. [34 U. S.] 329, in this, that the circuit court for the district of Ohio had adopted the insolvent law of that state, and our court had never adopted the law of Massachusetts. The decision in Freeman's Case [supra] likewise pointed out the

objection which had prevailed in Palmer v. Allen, 7 Cranch [11 U. S.] 550, and in others, that the federal courts cannot exercise powers bestowed by state laws on state officers, nor can congress require or control their exercise by the state officers.

The act of March 2, 1867 (14 Stat. 543), on which this petitioner relies, was plainly and pointedly intended to apply to Massachusetts; for it addresses itself to the very points ruled in the cases just cited. It not only provides a federal officer to take jurisdiction of such cases, but adopts the modifications, conditions, and restrictions upon imprisonment for debt then existing by the laws of the several states, and the course of proceedings which shall thereafter be adopted therein; and provides for the discharge of any defendant arrested on mesne process or execution issuing out of the courts of the United States, who would be entitled to his discharge on like process from the state courts, thus obviating the precise difficulties, and all the difficulties, upon which the Case of Freeman [supra], and most of Catherwood v. Gapete [supra], were decided. It will not now be necessary to examine in detail the many and interesting cases which concern the application of state insolvent laws to United States process in general; because it cannot be doubted, and has not been questioned in argument here, that the poor-debtor law of this state, passed in 1855, and embodied in chapter 124 of the General Statutes, has been adopted by congress in the act of 1867, so far as it relates to private persons suing and being sued for debt in actions at common law. The point remaining for judgment, and which has received careful consideration at the bar, is, whether the United States, when they appear as plaintiffs in such an action, are within that statute. The argument of the district attorney is that the sovereign is not bound by a general act of the legislature, unless named in it. This is a maxim of English law; but the exceptions to it are neither few nor unimportant. In Willion v. Berkley, 1 Plowd. 223, this maxim was learnedly discussed, and a majority of the court decided that the king was bound by the statute de donis. It is said by learned writers that the king is impliedly bound by statutes intended to remedy a wrong, because, being the fountain of right, he cannot wish to persevere in wrong; and by acts for the public good, the relief of the poor, the general advancement of learning, religion, and justice, and the prevention of fraud. Bac. Abr. "Prerog." E, (5); Broom, Leg. Max. 51; Chit. Prerog. 382; and that he is not bound by acts which would divest him of any of his prerogatives, such as the statutes of limitation, insolvency, bankruptcy, and set-off. Broom. Leg. Max. 52. Mr. Chitty goes so far as to say that acts which would divest or abridge the king of his prerogatives, his interests, or his remedies, in the slightest degree, do not in general extend to or bind

him, unless he is expressly named. Chit. Prerog. 383. I am not prepared to admit this statement of the learned author, made in 1820, as expressing the true limitations of the doctrine at this day in England, nor as being entirely consistent with itself; for I have seen decisions in which statutes which appear to me to abridge the king's remedies have been held to extend to him, though not named. But I shall not stop to discuss this point. What I am concerned with is, that no such broad extent of prerogative exists in this country, in my opinion. It is true that the courts of most of the states, following an early decision in Massachusetts, have held that statutes of limitation do not bar the sovereign. Stoughton v. Baker, 4 Mass. 522; People v. Gilbert, 18 Johns. 227; Com. v. Baldwin, 1 Watts, 54; U. S. v. Hoar [Case No. 15,373]; and many other cases. Mr. Sedgwick traces the doctrine to feudal notions of prerogative not compatible with our polity, and commends the action of those states which have changed it by statute. Sedg. St. & Const. Law, 106. But the rule is too firmly established to be changed, excepting by legislation, which, however, has generally been called in to modify it. This exception of the sovereign from the statute of limitations has usually been defended in this country upon a reason equally applicable here as in England, that public remedies ought not to be lost by the laches of public officers. No such reason exists in the case of bankruptcy, insolvency, or set-off; and no such course of decisions has been made on those subjects. Set-off has always been allowed against the United States, by virtue, no doubt, chiefly of the act of March 3, 1797 (1 Stat. 512); it has never been refused on the ground of prerogative in any case not coming strictly within that statute, when it would have been allowed to a private person. The language of the judges certainly does not seem to countenance any such distinction. U. S. v. Ringgold, 8 Pet. [33 U. S.] 150; U. S. v. Macdaniel, 7 Pet. [32 U. S.] 1.

With regard to insolvency, the cases are not agreed. It has been held in New York and Pennsylvania that the sovereign is not bound, and, in Maryland, that he is bound. People v. Rossiter, 4 Cow. 143; People v. Herkimer, Id. 345; Com. v. Hutchinson, 10 Pa. St. 466; State v. Walsh, 2 Gill & J. 406. None of these cases appear to have been much argued or carefully considered. Against them I may well set, in this connection, the decision of Mr. Justice Thompson, of the supreme court of the United States, in Stearns v. U. S. [Case No. 13,341], who held, reversing the judgment of the district court of Vermont, that a defendant, sued by the United States in a state court, and committed to jail on execution, could be lawfully discharged under the poor-debtor law of Vermont. "The United States," says the learned judge, "are a body corporate, having a capacity to contract, to take and hold property, and, in this respect, stand upon the same footing with other corporate bodies; and if they will prosecute their suits in the state courts, and avail themselves of the state laws for this purpose, it is not perceived that any good reason can be given why such state process as they use, for the purpose of enforcing their right, should not be subject to the state law." He goes on to say that if the suit had been prosecuted in the courts of the United States, different considerations might have been presented. He alludes, of course, to the consideration whether the state law had been adopted by congress, which, I suppose, the law of Vermont then in question had not been, because the cause of action probably arose before the passage of the process act of 1828 [4 Stat. 278]; but, as no dates are given in the report of the case, I cannot affirm this with positiveness. That point is not important here; because the act of 1867, as we have seen, undoubtedly does adopt the poor-debtor law then, as now, existing in Massachusetts. What that case does decide, both necessarily and expressly, is, that the United States are not excepted out of the poor-debtor law of Vermont by virtue of any prerogative. I have seen but one case which says that a state is not barred by a discharge under the bankrupt act either of 1841 or of 1867. Com. v. Hutchinson, 10 Pa. St. 466, above cited. That case goes upon an entire misapprehension. The learned judge who delivers the opinion of the court says, very truly, that the king of Great Britain is not bound by similar acts; and, for the American law, he relies on U. S. v. King [Case No 15,536], decided on the bankrupt act of 1800 [2 Stat. 19], and says that he has compared that act with the law of 1841, and finds nothing to distinguish them in this particular. Now, it happens that section 62 of the act of 1800 expressly excepted "any right to or security for money due to the United States or to any of them;" and U. S. v. King [supra] merely gave the true and necessary construction to these words, while the act of 1841 contains no such exception. But the discharge of the person of a poor debtor, and a discharge of the debt, depend on very different considerations, and the laws of the United States have always so treated them.[2]

[That the United States and the several states considered as creditors holding ordinary debts are bound by the bankrupt act of 1867, and will be barred by the certificate, is entirely clear, because all provable debts are to be discharged, and provision is made that such debts may be proved and shall have a preference in the payment of dividends, and is shown by the very exceptions that the certificate shall not bar debts created by the defalcation of a public officer, and that the act shall

---

[2] It has now been decided that the United States are not bound by a discharge in bankruptcy. United States v. Herson, 20 Wall. [87 U. S.] 251.

not interfere with the assessment and collection of taxes by the United States or the states. I do not mean now to say what, if any, fines, penalties, etc., are debts with the bankrupt act, but to refer to such debts as were in judgment in Stearns v. U. S. [supra], and in many other cases. I conclude, therefore, that in this country there is no course of decisions exempting the sovereign by virtue of his prerogative from the operation of any general statutes, except those of limitation, and I think it doubtful whether that exemption would be now established here if the question were new. The modern and reasonable tendency is to limit rather than enlarge the prerogative, and to construe all statutes according to the intent. and by rules which really tend to ascertain that intent, of which this rule is not one. No doubt the sovereign may often be excluded by the subject matter; but the question ought to be decided upon each statute upon a just consideration of its language and intent.][3]

Again, prerogative, as now understood, does not extend to matters of process and remedy, excepting always the statute of limitations, which is held to touch only the remedy. "The crown," says Pollock, C. B., "is not bound with respect to its property or person, but is bound with respect to the practice in the course of the administration of justice." Attorney General v. Radloff, 10 Exch. 94. And so it has been held that the crown was bound by an act requiring all writs of error to be brought in the exchequer chamber. Rex v. Wright, 1 Adol. & E. 434. In the learned discussion by the plaintiff's counsel in that case, it is said that the rule of exemption applies only to the property or peculiar privileges of the crown. This decision was followed in De Bode v. Reg., 14 Jur. 970. In this country, a very able and learned argument was made by Nott, J., to prove that the United States are not bound by the acts admitting parties to be witnesses. Jones v. U. S., 1 Ct. Cl. 383. But the supreme court of the United States has decided that they are bound. Green v. U. S., 9 Wall. [76 U. S.] 655. Another case, which the counsel of the debtor rely on, is U. S. v. Knight, 14 Pet. [39 U. S.] 470, in which it was held that the United States are bound by the statutes of Maine, giving prisoners the privilege of jail limits. If any general rule can be laid down, it is that the United States are bound by laws of remedy and of process; though it really depends upon the intent of each act. Take, for example, the eleventh section of the judiciary act of 1789 (1 Stat. 79), which declares that no person shall be arrested in one district for trial in another in any civil action, and that no civil suit shall be brought against an inhabitant of the United States in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ: has it ever been doubted that the United States, as a party plaintiff in a civil action, is bound by both these restrictions? And yet the language of the act of 1867 is equally broad, that any defendant arrested, &c., shall be entitled, &c. It resembles entirely the language of the act of which Tindall, C. J., said, in Rex v. Wright, ubi supra (at page 447), "In the case, therefore, of an act of parliament, passed expressly for the further advancement of justice, and in its particular enactment using terms so comprehensive as to include all cases brought up by writ of error, we think there is neither authority nor principle for implying the exception of criminal cases on the ground that the king, as public prosecutor, is not named in the act." It may be said that this statute really deprives the plaintiff of a right. But to this it is answered, that the United States have no right or prerogative to arrest a debtor on mesne process in an action of assumpsit, excepting what is derived from the process acts of the state adopted by congress in 1789 and 1792 [1 Stat. 275]; and, therefore, when the practice of the state has been changed, and congress have assented to and adopted the change, the United States, like all other plaintiffs, must conform. It will hardly be maintained that the prerogative here extends to the limits once demanded for it in England, that the sovereign may take advantage of all acts of parliament, but shall not be bound by them. If the conditions and restrictions now imposed on imprisonment for debt had existed in 1789, it is perfectly clear that the United States would be bound, because it is under the state practice then adopted alone that it has any right of arrest; and the true way to look at the process act is, that the amendment is incorporated with it so as to make, as it were, but one statute; and so the result is clearly reached, that all process is included, whether for the United States or any other party. Another answer is, that the right to imprison a defendant ought not to be held to be a prerogative right, unless the statute expressly makes it so.

It is further contended for the government that congress has fully legislated upon this subject, by numerous acts, giving power to the president, the secretary of the treasury, and the postmaster-general, respectively, to discharge from prison poor debtors of the United States, in the manner and upon the terms pointed out by these acts. [Act of June 6, 1798, c. 49 [1 Stat. 561]; act of March 3, 1817, c. 114 [3 Stat. 399]; act of March 3, 1825, c. 64, § 38 [4 Stat. 113.][4] In the case of private persons, it has uniformly been held that the act of congress of June 2, 1800 (2 Stat. 4), is cumulative only; and so, even, as to the United States in respect to jail limits: U. S. v. Knight, 14 Pet. [39 U. S.] 301; Campbell v. Hadley [Case No. 2,358]. In Duncan v. Darst, 1 How. [42

---

[3] [From 14 Int. Rev. Rec. 205.]

[4] [From 14 Int. Rev. Rec. 205.]

U. S.] 309, Mr. Justice Catron says: "It is insisted for the defendant in error that the act of congress of 1800, c. 4, for. the relief of persons imprisoned for debt, is the only law by which a discharge can be had from a ca. sa., awarded by a court of the United States. We do not think so." He then refers to the provisions of that act as being inconvenient in comparison with the state laws, and proceeds: "So there are other modes of discharge prescribed by the state laws that can be executed just as conveniently and properly by the federal courts and judges, in cases where the execution issues from the latter courts. State laws of this ·description have been adopted by the acts of congress as incident to the remedy: they are cumulative, and in addition to the act of congress of 1800, both being in force. As we have adopted in effect the same construction where property was to ·be levied on, in Amis v. Smith, 16 Pet. [41 U. S.] 312,. it would be harsh to hold otherwise in restraint of personal liberty." The act of June 6, 1798, authorizing the secretary of the treasury to discharge the poor imprisoned debtors of the United States, is very analogous to the poor-debtor law of Massachusetts, and anticipates its wise and humane policy by some forty years. It is not, however, as convenient in its practical operation; and I can see no reason why it should not be considered cumulative, as well as the act of 1800, in relation to private debtors. This latter act excludes public debtors by name; but this, no doubt, was because they had already been provided for by the act of 1798. There is no such exception in the act of 1867. The act of March 2, 1831 (4 Stat. 467), and five acts passed to amend that act, and keep it alive, down to 1843, which were cited at the bar, do not relate to imprisoned debtors at all, nor to a release from imprisonment. The secretary of the treasury was already invested with power over that subject by the act of 1798. Those laws were for the discharge of the debts due the United States in certain cases when the debtors were insolvent, and resembled a bankrupt law. I have not overlooked the decision of Judge Hopkinson, cited and relied on by the government. [U. S. v. Hewes, Case No. 15,-359.] 5 No one can differ from that learned and able jurist, without great doubts of the soundness of his own opinion; but there are some considerations affecting the case, which I may state. Judge Hopkinson relies largely on U. S. v. Green [Id. 15,258], in which Judge Story decided that the United States could sue in the district court as indorsee of a note, though the original holder could not have sued in such court. Judge Hopkinson cites this case as if it had turned on the point of the United States being bound by an act in which they are not mentioned, whereas Judge Story relies but little on that

5 [From 14 Int. Rev. Rec. 205.]

point, and expressly puts his decision on the act of 1815 [3 Stat. 245], which gives the district courts jurisdiction of all suits at common law in which the United States sue, and says he should have had very great doubt but for that act. Again, several of Judge Hopkinson's objections have been carefully met and obviated by the statute of 1867; for they were objections like those found in this circuit, and went to the application of the act in the federal courts, under all circumstances. Judge Hopkinson says his opinion is opposed to one given by Judge Betts in the Southern district of New York, of which I have seen no report. And, finally, I consider that congress, by passing the act of 1867, manifest an intent to persevere in the wise and humane policy of giving to debtors arrested under federal process the advantage of the state laws, notwithstanding the objections raised against it, though, at the same time, they try to obviate those objections as far as practicable. Defendant discharged.